## WOOD v. UNITED STATES.

No. 8067.

Circuit Court of Appeals, Fifth Circuit.

June 20, 1936.

Rehearing Denied Aug. 27, 1936.

Edwin H. Grace, of New Orleans, La., for appellant.

Rene A. Viosca, U. S. Atty., and Saul Stone, Asst. U. S. Atty., both of New Orleans, La.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The appellant was convicted on two indictments, consolidated by consent for the purpose of trial, and sentenced on each to serve a term of imprisonment. The first indictment, against Thomas J. Wood, Charles Smith, Clarence Hessemer, Wilbert Fabre, and Howard Fabre, charged a conspiracy between these defendants and numerous others, named and unnamed, to import alcohol into the United States from Cuba and other foreign countries, in violation of the Tariff Act of 1930 (19 U.S.C.A. § 1001 et seq.). The conspiracy, as alleged, was formed about September 15, 1933, and continued in operation until September 2, 1934. This indictment also contained four additional counts charging substantive offenses of unlawful importation of alcohol, and concealment thereof after importation. Count 4 was dismissed because it contained a numerical error as to the year in which the offense was committed, and the second indictment was returned in its place. The defendants Smith and Hessemer pleaded guilty. Howard Fabre, who has died since the trial, was never arraigned because of his being in the last stages of tuberculosis at the time. The trial then proceeded against the defendants Wood and Wilbert Fabre. They were both convicted, but the latter is not appealing. The defendant Thomas J. Wood is the sole appellant.

The conspiracy, including the overt acts, and also the substantive offenses, were es-

tablished beyond a reasonable doubt, to the satisfaction of the jury, by a mass of evidence, oral and documentary, direct and circumstantial. The witnesses for the government were its revenue officers and its agents of the Alcohol Tax Unit; bank tellers and officers of banks; coconspirators who were also defendants, and coconspirators who were not defendants; the foreman of a shipyard, a mechanic, a ship carpenter, an engineer, an admeasurer, and skippers and seamen who had been employed and paid by Wood personally to operate and repair the ships and small boats used to import the contraband goods; and various other persons, who as employees, contractors, or otherwise had been used by the appellant as guilty or innocent instruments to carry out the conspiracy and commit the substantive crimes set forth in the indictment.

The court fully instructed the jury upon the issues submitted to them, and upon the principles of law which should guide them in reaching their decision. There was no exception to the charge, and the only assignments of error in this court have reference to the admission of documentary proof offered in behalf of the government. A clear understanding of the competency of this evidence may be obtained only after a consideration of the facts, constituting the conspiracy and other crimes, as established by the verdicts of the jury.

Whether Wood and Smith were partners in the unlawful business, or whether the latter was merely Wood's employee, was a secret between them not disclosed by the evidence. In either case their guilt was clear, and the verdicts are consistent with either view. They acted in concert and were operators on a large scale, engaged in the business of importing alcohol into the United States without paying the tariff. They purchased the product from a fellow conspirator, one Severino Lavin, the owner of La Campana Distillery in Mariel, Cuba, and smuggled it past the custom officers at night in ships bought for that purpose.

In the early part of 1933 Lavin met James Lloveras in New Orleans, and made arrangements with him to handle messages to be sent in code from that city to Cuba. The code was formulated by Lloveras, who kept a copy which he afterwards destroyed, and a copy was given to Lavin, which was found in his distillery and produced in evidence. Thereafter messages were sent in accordance with the understanding. Lloveras was to receive a commission for translat-

ing these messages, and was told by Lavin that various persons in and around New Orleans would call on him for the purpose of having messages sent and translated. In a short time, Wood, in company with Charles Smith, one of the defendants in this case who pleaded guilty, called on Lloveras for the purpose of having messages sent to La Campana Distillery, and a series of messages were subsequently exchanged between Lloveras, acting for Wood and Smith, and La Campana. The messages were sent in code, and all had reference to the purchase of alcohol.

Lloveras testified that he personally prepared these messages, and that Wood was the biggest operator with whom he dealt. The system followed in ordering alcohol in pursuance of the conspiracy, when Wood or Smith called at Lloveras' office, was that the latter would give him the name on a slip of paper of the person in Cuba to whom to make remittance. Thereupon Smith or Wood, or sometimes both of them, went to the Whitney National Bank in New Orleans and remitted large sums to a representative of La Campana Distillery in payment for cargoes of alcohol. Wood was the first person who went to the vice president of this bank, in 1933, for the purpose of making these remittances to Mariel, Cuba. In making arrangements, Wood did all of the talking, but Smith actually handled the money. Remittances were also made through the Hibernia National Bank of New Orleans.

Lloveras kept records of all transactions he had for Wood and others with La Campana Distillery. In order to keep an account of the amount due him for his services, at 3 cents a case, entries in his records were made from letters (which letters were destroyed) received by him from La Campana Distillery, wherein he was informed of the quantities of alcohol loaded in a Cuban port on vessels operated by Wood and others. The amount actually paid him by La Campana as commissions corresponded with the entries made in conformity to the letters. Wood operated offices in several places in the city of New Orleans. These offices had unlisted telephones, and there was frequent communication between various members of the conspiracy over these telephones and by telegraph.

Among the vessels operated by Wood and his confederates were the Keokuk, Sylvia, Thelma, and Wanderer. About a dozen trips were shown to have been made

by these vessels during the time involved in the conspiracy charge. Wood made several trips to the vicinity of the vessels before their departures for Cuban waters, and personally paid for repairs. There were seizures by federal officers near New Orleans of the Thelma on June 26, 1934, and of the Sylvia on September 1, 1934, one having a cargo of 1,400 cases of alcohol, and the other of 1,000 cases.

The books kept by Lloveras were properly admitted in evidence because they were records made by an agent or employee of the conspirators in the usual course of business in connection with the object of the conspiracy. All of the entries were made by Lloveras himself or his bookkeeper, both of whom testified in the case and identified every entry appearing upon the books. The source of the information was not incompetent as hearsay, but was the destroyed letters sent by the owner of the distillery, in furtherance of the conspiracy, notifying him that shipments of alcohol had been made in accordance with orders given by Wood through Lloveras. By these letters the interpreter of the conspirators was notified that the money sent by Wood had been received and the alcohol delivered by the selling conspirator to the purchasing conspirator. Whether Lloveras was the guilty or innocent agent of Wood and Lavin is immaterial, the things done by him were not hearsay or res inter alios acta, but were the acts and doings of the parties by whom he was employed and for whom he was acting. He and his clerk had first-hand information of the facts recorded, viz, that La Campana, one of the conspirators, had written letters saying that a certain number of cases had been delivered to vessels of Wood, another conspirator. The conspiracy having been shown, these letters would have been admissible against Wood, and, the letters having been destroyed, secondary evidence of their contents was competent as the best evidence obtainable. The fact that payments were made in accordance with the letters tends to show the accuracy of their contents. Delaney v. United States, 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462; American Fur Co. v. United States, 2 Pet. 358, 7 L.Ed. 450; Nudd v. Burrows, 91 U.S. 426, 438, 23 L.Ed. 286; Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1197, 41 L.Ed. 289; Davis v. United States, 12 F. (2d) 253 (C.C.A.5th); Madden v. United States, 20 F.(2d) 289 (C.C.A.9th), certiorari denied Parente v. United States, 275 U.S. 554, 48 S.Ct. 116, 72 L.Ed. 423; Merrill v. United States, 40 F.(2d) 315 (C.C.A.5th); Ford v. United States, 10 F.(2d) 339 (C. C.A.9th); Browne v. United States, 290 F. 870 (C.C.A.6th); Thomas v. United States (C.C.A.) 156 F. 897, 17 L.R.A.(N.S.) 720; Burns v. United States, 279 F. 982 (C.C.A. 8th).

Scores of telegrams between Wood and Smith, in New Orleans, and La Campana Distillery, in Cuba, were admitted in evidence over the objection of the appellant, and the action of the court in so doing is assigned as error. These messages had reference to purchases of alcohol or the loading, embarking, and movement of ships carrying contraband; and their contents vividly illustrate the inside operations of the unlawful business at its crest. There were messages advising La Campana of remittances of money by Wood and Smith to pay for alcohol, and requesting information as to when the Wanderer arrived or when the Thelma would be able to sail. There were instructions to change routes in order to avoid the Coast Guard. Remittances through New Orleans banks, as shown by their records, corresponded as to dates and amounts with messages of advice to the same effect sent by Wood and Smith. There was no error in overruling the objection to the admission of these telegrams. Wood's connection with some of them was established by direct and positive evidence; the proof as to others was circumstantial; but, taken together, the whole evidence proves conclusively that the telegrams were sent and received for and on behalf of appellant. Ford v. United States (C.C.A.) 10 F.(2d) 339; Id., 271 U.S. 652, 46 S.Ct. 475, 70 L.Ed. 1133; Hartzell v. United States, 72 F.(2d) 569, 578 (C.C.A.8th); Zarate v. United States, 41 F.(2d) 598 (C. C.A.5th).

The records of telephone calls from hotel rooms and offices occupied by Wood and Smith were admitted in evidence, even though no showing was made as to the nature of the conversations. The appellant admits that these records "were not of a highly prejudicial character," but argues their inadmissibility because too remote. They were introduced for the purpose of showing constant communication between Wood and his coconspirators, and were merely corroborative of other testimony. In Clune v. United States, 159 U.S. 590, 16 S.Ct. 125, 126, 40 L.Ed. 269, the court held that, where a case rests upon circumstantial evi-

dence, "much discretion is left to the trial court, and its ruling will be sustained, if the testimony which is admitted tends even remotely to establish the ultimate fact. Alexander v. United States, 138 U.S. 353, 11 S.Ct. 350 [34 L.Ed. 954]; Holmes v. Goldsmith, 147 U.S. 150, 13 S.Ct. 288 [37 L.Ed. 118]; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26 [37 L.Ed. 996]; Thiede v. Utah Territory, 159 U.S. 510, 16 S.Ct. 62 [40 L.Ed. 237]."

We find no error in the record, and the judgments of the court below are affirmed.