## UNITED STATES v. NOVICK.
### No. 76.

Circuit Court of Appeals, Second Circuit.

Dec. 1, 1941.

Writ of Certiorari Denied Mar. 2, 1942.

See 62 S.Ct. 795, 86 L.Ed. ——.

108

Jacob W. Friedman, of New York City (Fred D. Kaplan, of New York City, on the brief), for appellant.

Peter J. Donoghue, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., and Winston H. Pickett, Asst. U.S. Atty., both of New York City, on the brief), for the United States.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal from a conviction for conspiring to evade payment of taxes upon distilled spirits raises principally questions as to rulings by the district court. True, appellant asserts that there was insufficient evidence to go to the jury; but we think this point is so clearly against him that an exhaustive review of the facts is unnecessary. Indeed, appellant hardly stresses the point except to afford a basis for his contention that any claimed errors made in the course of the trial must have affected him quite adversely.

█ Appellant was one of seventy-two defendants indicted on the conspiracy charge. In general, it was shown that there were five stills in operation in the Bronx and Yonkers; and there was substantial evidence establishing the interrelationship of various defendants with the several stills and the sources of supply. The evidence with reference to appellant

connected him principally with the supplying of sugar for the operations and the renting of "drops" where the sugar could be temporarily stored.

Appellant operated two restaurants in Yonkers, which were frequented by various of the defendants. The first direct connection of appellant with the conspiracy occurred in April or May, 1939, when he approached one Galdo, operator of a garage in Yonkers, with reference to storing sugar in Galdo's garage. An agreement between Galdo and other defendants resulted, and large quantities of sugar were dropped at the garage. On another occasion appellant performed the same service in obtaining another garage to be used as a "drop." Appellant also acted as a go-between in inducing a wholesale grocery to supply some sugar, which apparently was used for the stills. These three instances added to much other incriminating testimony, including testimony of several admissions on his part, clearly warranted submission of the case to the jury.

The error most strongly urged by appellant relates to admission of evidence which, he says, tended to impeach him only on a collateral issue and was highly prejudicial because it suggested his guilt of another crime than that in issue here. But we think that under the circumstances it was proper rebuttal testimony. On direct examination, appellant, while seeking to explain his relationship with one of the defendants, admitted that he played "numbers." On cross-examination he was interrogated as to certain papers found in his possession at the time of his arrest, when his counsel volunteered the suggestion that he had no objection to the admission of all such papers in evidence. They were so received and appellant readily admitted that they referred to the numbers game. He asserted, however, that they showed bets he made, and denied that they indicated bets he had taken. Thereafter in rebuttal the prosecutor called a city detective as an expert on "policy numbers." The substance of his testimony was that from the papers in evidence he could determine that they were the sort used by a policy banker, rather than a mere policy player. This was objected to as a collateral issue and, after a motion to strike was denied, was followed by extensive cross-examination of the witness as to policy games in general and as to the papers in evidence in particular.

■ Appellant argues that the testimony of the detective was error both because its effect was to brand appellant a perjurer on a collateral matter and because it imputed to appellant a criminal offense other than that charged. These two claims are interconnected; if the latter and more serious objection fails, the former will necessarily go with it. It is settled beyond question that extrinsic evidence to prove the commission of another crime is inadmissible, and that the cross-examiner is bound by the witness' denial except where there is a conviction of record. Rau v. United States, 2 Cir., 260 F. 131; People v. De Garmo, 179 N.Y. 130, 71 N.E. 736; 3 Wigmore on Evidence, 3d Ed. 1940, §§ 987, 980. But this clear rule does not seem to us applicable under the circumstances. Here appellant himself had pretty thoroughly opened the matter. In admitting that he played the numbers he was endeavoring to explain his admitted close association with a co-defendant who was a bookmaker. If in rebuttal it was established that appellant was a numbers banker, the jury might infer a different relationship and thus discount his protestations of innocent friendship. Certainly some leeway must be accorded the prosecution in offsetting the effect of original testimony of appellant. Moreover, once the papers were in evidence without objection, an explanation of the figures on them would appear to be in order. Without such explanation the exhibit might well be more confusing to the jury than any asserted confusion arising from further testimony.

■ Hence it would seem that the testimony under the circumstances was directly admissible to rebut appellant's testimony. But in any event it seems within the discretion of the court to hold that there was no unfair surprise or confusion of the issues under the circumstances. A court is hardly justified in reversing for confusion of issues without surprise, 6 Wigmore on Evidence, 3d Ed. 1940, § 1906; and surprise is surely lacking as to an issue opened by appellant. And if the evidence was proper rebuttal, the fact that incidentally it implied an illegal act on appellant's part would not bar it. 1 Wigmore on Evidence, 3d Ed. 1940, § 215. Even if the ruling be considered discretionary only, the possibility of prejudice does not seem to us strong enough to require a reversal. No one mentioned policy banking as a crime, except for a quite oblique and unchallenged statement by the Government's expert on his cross-examination by appellant that if he knew policy bankers he "would arrest them"; and no charge was requested or made as to the matter. It seems going far to conclude that this incident would lead the jury to brand appellant as a criminal on another charge. And if it did, it is at most but a step beyond what appellant himself advanced; for playing the numbers itself appears to be a crime—a misdemeanor. N. Y. Penal Law, § 974, Consol. Laws, c. 40; People on Complaint of Dunn v. Crawford, —— Misc. ——, 25 N.Y.S.2d 259. And it appears that the policy banker, too, may be prosecuted under this statute, even though also available is the general lottery prohibition statute with a higher penalty. N. Y. Penal Law, § 1372; People v. Hines, 284 N.Y. 93, 29 N.E.2d 483. We conclude that reversible error was not here shown.

■ The next most serious alleged error is the judge's charge of what constitutes reasonable doubt. It is not necessary to set out the criticized portions in full. Briefly, they aimed to explain "reasonable doubt" by means of homely examples, such as one's doubt about whether it will rain or whether prices will go up. Doubtless a judge is better advised not to use trivial examples in such a serious context. But the concept of "reasonable doubt" is exceedingly difficult to explain. Perhaps this case shows the difficulty which confronts the trial judge in any attempt to gild the lily. The illustration perhaps most doubtful was that of an individual "banking" his judgment and investing his money in buying goods against a price increase because of the possibility of war. Fairly interpreted, however, this appears rather an attempt to impress upon the jury the kind of strong conviction one must have in finding against the accused, rather than any suggestion that the probability of war was thus shown. The general context makes this clear and we do not think the jury could have been misled by this one somewhat cloudy allusion. In any event, the entire impression created by the full instruction with examples—in their context as examples—will be a surer guide than the examples alone. And since the instruction in toto was not prejudicial, we can hardly accept as erroneous an ill-chosen illustration. That the instruction

was repeated when the jury returned for further clarification does not make it the more erroneous. No objection or exception was taken at the time, and hence the trial court had no opportunity to consider any changes appellant might have desired. United States v. Manton, 2 Cir., 107 F.2d 834, 847, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

▮ Other errors are less important. The judge punished a government witness for contempt for refusal to testify. This could hardly be prejudicial to appellant, because there were sixteen defendants and no light was thrown on whom the witness was to testify against or what he would say. It was not error. Di Carlo v. United States, 2 Cir., 6 F.2d 364, 367, certiorari denied 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168. Objection is also taken to testimony of events after what appellant considers the termination of the conspiracy. But there was evidence that the conspiracy had actually continued, and it was up to appellant at the least to prove his dissociation from it after the time upon which he relies. Obviously he could not do this, for he denied any connection with the conspiracy. The very evidence he sought to exclude, if believed, showed that he still remained in the conspiracy. He also objects to telephone company toll slips showing extensive calls to and from the public 'phones in his restaurants to various of the defendants; but such evidence has regularly been held admissible as showing the means of communication between co-conspirators and the fact that they were in constant communication with one another. Blakeslee v. United States, 1 Cir., 32 F.2d 15, 18; United States v. Easterday, 2 Cir., 57 F. 2d 165, 167, certiorari denied 286 U.S. 564, 52 S.Ct. 646, 76 L.Ed. 1297; Wood v. United States, 5 Cir., 84 F.2d 749, 751, certiorari denied 299 U.S. 589, 57 S.Ct. 116, 81 L.Ed. 434; United State v. Sciortino, 2 Cir., 115 F.2d 504, certiorari denied 312 U.S. 691, 61 S.Ct. 710, 85 L.Ed. 1128.[1] Finally, appellant objects to the judge's sending the jury back after they reported a disagreement. This was clearly within his discretion. United States v. Rosso, 2 Cir., 58 F.2d 197.

Affirmed.

---

[1] Such, also, was our holding in the companion case hereto of United States v. Gallo, 2 Cir., 123 F.2d 229, 231.