UNITED STATES v. MODERN REED & RATTAN CO., Inc., et al.

No. 87, Docket 20360.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1947.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner and William M. Regan, Asst. U. S. Attys., of New York City, of counsel), for the United States.

Davies, Auerbach, Cornell & Hardy and John F. Broderick, all of New York City (John K. Carroll and John J. Donovan,

both of New York City, of counsel), for appellants.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants were convicted when tried in the District Court for the Southern District of New York on 28 counts of an information charging violations of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. § 201, 207 et seq. Giannasca is the president of the corporate defendant which manufactured furniture in the City of New York to be shipped in interstate commerce and he was in charge of its business when the violations were alleged to have taken place. The violations charged included the willful failure to pay certain named employees overtime compensation at the statutory rate; failure to keep accurate records; and shipping in interstate commerce furniture produced by the corporation with the help of underpaid employees. Certain counts were dismissed on motion of the prosecution and the defendants were acquitted on the count charging failure to keep accurate records. They were both fined and Giannasca was also sentenced to imprisonment.

It was alleged in the information that the appellants had on a former occasion pleaded guilty in the District Court for the Southern District of New York after an information charging other violations of the Fair Labor Standards Act of 1938 had been filed against them and that they had been sentenced for those offenses. This was made known to the jury by the assistant district attorney at the start of the trial without objection by the defendants' trial counsel. Upon this foundation the prosecution built its case except as to the failure to pay one Seibert, a piece-worker, statutory overtime compensation, mainly with the testimony of one De Pietro and substantially as follows.

In the early fall of 1942 Giannasca became aware that not long thereafter the War Production Board would curtail or prohibit the manufacture of metal springs for use in furniture. He wanted to have a surplus stock of such assembled springs on hand when the W.P.B. order should become effective and wanted the company's employees to assemble them by working overtime. But he didn't want to pay them at the higher rate the statute required payment to be made.

Consequently Giannasca arranged with De Pietro, an employee who was something like a foreman and was somewhat of a leader of the workmen, to explain to the employees how the additional springs were needed to keep the factory running and give them employment after the restrictive order was made and to find out if they would be willing to take their overtime compensation at the statutory rate and then pay that part which was the overtime premium back to the company through De Pietro. They agreed and thereafter the payrolls were made up to include time and one-half for overtime worked in excess of 40 hours a week. Payments were made at this rate to such employees each Friday and by the following Monday they paid all but straight time compensation to De Pietro, who testified that he accounted for that and for his own premium pay to the defendants. This continued for some months and until the employees became unwilling to make any more 'kick-backs".

■ There was but a little evidence, other than the testimony of De Pietro, who was an accomplice at best, to connect either appellant with the "kick-backs" he collected. Though it has been argued that the evidence was insufficient to take the case to the jury we shall spend no time on that point as it is clear that the evidence of De Pietro was adequate, if believed, and the real issue is one of credibility which we cannot review. United States v. Moran, 2 Cir., 151 F.2d 661; Kempe v. United States, 8 Cir., 151 F.2d 680.

It was, however, error to put the fact of the previous conviction and sentence of the defendants for previous violations of this statute before the jury unless that error should be treated as cured, a matter to which we will later return.

Apparently the trial counsel of the defendant refrained from objecting to such disclosure because he felt that § 216(a)

of this statute which limits imprisonment to persons who are convicted "for an offense committed after the conviction of such person for a prior offense under this subsection," made necessary inquiry by the jury on that subject. The government has here so argued in reliance upon the provisions of the National Prohibition Act, 27 U.S.C.A. § 46, requiring the allegation of former convictions under that statute and establishing different maximum sentences for first, second and subsequent offenders. See Massey v. United States, 8 Cir., 281 F. 293; Singer v. United States, 3 Cir., 278 F. 415.

The supposed analogy is, however, an illusion. The Fair Labor Standards Act of 1938 makes a former conviction for violating that statute no part of the specific offense which may be charged under it and leaves it only a matter for the consideration of the judge in imposing the sentence. We are not here concerned with what may be the proper procedure where the fact of a former conviction may be in issue for there is no dispute but that these appellants are the identical ones who previously pleaded guilty and were sentenced.

They were charged with specific violations of the statute and were entitled to be tried only for those offenses and upon nothing but competent evidence. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077. The general rule applicable to them is that evidence of the commission of a wholly separate and independent crime even though of the same nature is not admissible. Kempe v. United States, 8 Cir., 151 F.2d 680; Fabacher v. United States, 5 Cir., 20 F.2d 736. Sound policy in the administration of the criminal law underlies this well established principle and little is to be gained by pointing out that its exclusion can hardly be justified on the ground of irrelevancy. Nor should we fail to notice a plain error so far reaching because no objection was taken. Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 41 L.Ed. 289; United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555; Gomila v. United States, 5 Cir., 146 F.2d 372.

But, so it is now argued, even if it were erroneous at the beginning of the trial for the prosecution to place the appellants before the jury encumbered by their former conviction of similar offenses, subsequent events made the error nothing more than faulty timing and so really harmless since the order of proof is discretionary with the trial court. At first this does seem fairly plausible when it is pointed out that Giannasca did introduce in defense evidence that his character as to honesty and fair dealing was good and later became a witness himself. We shall assume that the government could then have proved the former conviction either to rebut the evidence of good character or to discredit him as a witness. But the difficulty is that, absent the initial error, it is not clear that the defense would have followed this pattern. Unless a defendant in a criminal case puts his character in issue or testifies himself neither that nor his credibility can be attacked by the prosecution, Mackreth v. United States, 5 Cir., 103 F.2d 495; United States v. Gross, 7 Cir., 103 F.2d 11. His freedom of choice as to such issues may not be taken from him by error previously committed in the trial.

Except for the initial error the defendants may well have decided to let the case go to the jury without doing anything to make the former convictions known, relying largely or wholly on the weakness of the government's competent evidence of their guilt. They were in effect deprived of that right and made to bear willy nilly the burden of previous offenses for which they had already paid the legal penalty.

Judgment reversed and cause remanded for new trial.