**UNITED STATES of America,**
**Plaintiff,**

v.

**Marvin R. COLE et al., Defendants.**

**No. 69 Cr. 827.**

United States District Court,
S. D. New York.

Nov. 26, 1971.

---

5. But this rule is subject to exceptions. See 28 U.S.C. § 1738; Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for plaintiff, by Edward M. Shaw, Asst. U. S. Atty., of counsel.

Millard & Greene, New York City, for defendants, by Myron Greene, New York City, Stanley P. Gimbel, Milwaukee, Wis., and Howard R. Udell, New York City, of counsel.

## OPINION

**POLLACK, District Judge.**

This is a criminal case charging income tax evasion and the filing of perjurious tax returns. A jury returned guilty verdicts against all three defendants on January 14, 1971. Post-trial hearings were held on March 24 through March 27, 1971, on a motion of defendants seeking to void the prosecution on the ground that the government's proceedings and proof were tainted by illegal electronic surveillance. However, the government established on the hearings by credible evidence beyond a reasonable doubt that the proof used at trial was free from any taint of illegality. United States v. Cole, 325 F.Supp. 763 (S.D. N.Y.1971).

On June 3, 1971, the defendants made the present motion for an order setting aside their convictions and granting them a new trial. They assert this time that improper evidence was received at trial and that they have newly discovered evidence in the form of the invalidation on May 21, 1971, of the defendant Cole's 1963 California conviction for obstruction of justice and that this entitles them to a new trial. Imposition of sentence upon the defendants has been withheld pending the determination of the motion.

The three defendants were convicted of income tax conspiracy and corporate income tax evasion in respect of tax liabilities for the fiscal years ending September 30, 1963 and September 30, 1964. The defendant Cole was convicted of evasion of his personal tax liabilities for the calendar years 1963 and 1964, and the defendant Fischer was convicted of perjury in wrongfully subscribing to the corporate defendant's income tax returns.

One of the elements of the government's charges was deduction by the corporation on its income tax returns of the cost of defending an obstruction of justice prosecution brought against defendant Cole personally in the Central District of California. Cole contended that the California expenses were business-oriented expenses, properly charged to the company and hence properly deductible from corporate income, and that their payment by the corporation was not a constructive receipt of income by him. The government contended that the deductions were fraudulent and motivated by an intent to evade income taxes.

As part of its proof, the government called as a witness, Joseph A. Ball, Cole's California counsel, in order to prove that Ball's fees charged to the corporation by Cole had been received for his professional services to Cole personally in 1963. On cross-examination, Ball was asked by defendants' counsel to describe what had transpired at the California trial, in an attempt to indicate that the litigation was business-oriented, and hence constituted a legitimate business expense rather than merely a personal expense of Cole.[1] On redirect examination, government counsel sought to offset Ball's testimony by questioning him about the testimony given at the California trial by Joel Benton, the chief prosecution witness, from which it could be inferred that Cole's illegal conduct stemmed from a personal and not a business concern. Benton's account put the California litigation in a far different light than the description of the underlying facts which had been given by Ball on cross-examination. Benton's evidence tended to show that the obstruction of justice charge had arisen from personal misconduct of Cole unrelated to Cole's business activities.

On recross-examination defendants' counsel undertook to impugn the Benton account by introducing post-trial remarks made by the California trial judge (Harry C. Westover, U.S.D.J.) at the time of sentencing Cole.[2] This neces-

---

1. The government strenuously objected to this line of questioning.

2. Judge Westover's comments were as follows:

"If I had tried this case without a jury, that I wouldn't have wanted to rely upon Joel Benton's testimony as compared to Marvin Cole's testimony. . . .

sarily brought to the jury's attention that Cole had been convicted. The defendants showed that Judge Westover had said after the jury's verdict that he would not have relied on Benton's evidence if he had tried the case without a jury.

The government promptly offered in evidence Cole's conviction of the California charge. Government counsel contended that in order to find Cole guilty, the California jury must have accepted Benton's evidence explaining the personal nature of the coercive acts on which the obstruction of justice charge had been based.

The Court admitted the evidence, ruling that the California conviction was admissible under the circumstances. The evidence was easily within the well-settled principle that the jury should have before it all of the facts relating to a given aspect of proof, in order to avoid any distortion from an incomplete or one-sided presentation; this is usually referred to as the doctrine of Verbal Completeness. The subject matter in dispute so far as this case was concerned was whether Cole's coercive acts in seeking to protect himself from a charge of perjury before a grand jury had been motivated by and related to personal considerations or an intent to protect the business interests of his corporation. It was pertinent in this case to determine whether the expenses of the California litigation were properly attributable to the corporation or to Cole personally.

In charging the jury herein, the Court made reference to the evidence which had been received concerning the charge against Cole in California. The jury was instructed that "evidence relating to that charge is not evidence of fraud with intent to evade the payment of taxes." The jury was additionally charged that Cole's motivation in the California situation was the key to the question of whether the costs of the California litigation were business-oriented and that it was left to the jury to decide what prompted him to act as he did, a corporate interest or the personal interest indicated by Benton's testimony.

Cole did not testify during the trial of this case. His counsel now states that this was to preserve what he considered to be an error in the reception of the California conviction in evidence. His theory is that Cole might have been questioned about the conviction on cross-examination if he took the stand. Counsel also asserts that the other defendants were harmed by Cole's inability to take the stand to explain certain transactions at issue.

The government's response to the motion to set aside the verdict and for a new trial is in substance that the fact of Cole's 1963 conviction in California was not inadmissible but came into the record properly, albeit on the government's case; that Cole's failure to testify was self-determined and is completely irrelevant to the questions raised by this motion; and that the reason now given for Cole's absence from the witness stand is nothing more than an afterthought, and immaterial at that under the facts of the record here.

This case was tried from January 4th to 14th, 1971. In November, 1970, a *coram nobis* proceeding was initiated in California to set aside the 1963 obstruction of justice conviction on the ground that there was illegal bugging of Cole's office in California in 1961 and 1962 and that the indictment there was the product of illegality. However, as is discussed more fully below, this Court was not apprised and had no knowledge of the *coram nobis* proceeding at any time during the New York trial.

On January 20, 1971, Judge Westover ordered a hearing on the *coram nobis*

In the testimony somewhere along the line I got the impression that Joel Benton was a drinker. I think possibly a question was asked whether or not he was discharged or fired because of his drink-

ing. He denied it. . . . If I had tried this case without a jury, I might not have relied upon the testimony of Joel Benton."

petition seeking to set aside the California conviction. In doing so, Judge Westover observed that

> Almost 7 years have elapsed since Cole's trial; witnesses have dispersed and may be unavailable; and recollections may have dimmed. Whether it would be feasible to retry the case at this late date is problematical.

Judge Westover's memorandum also adverted to the fact that Cole's counsel had initially sought an immediate ruling vacating Cole's 1963 conviction on the ground that "the immediate need for relief is to prevent the government from using this conviction to impeach Cole in the New York case.". However, Cole's counsel abandoned this request; Judge Westover's memorandum went on to recite that

> [A]t oral argument the vehemence of the 'immediate need' assertion was moderated by Cole's counsel, and the petition was taken under submission.

> At the hearing *on December 30, 1970* in this [the California] Court, Cole's counsel indicated that the assertion of possible impeachment of Cole was not the crux of the coram nobis proceeding, thus obviating the necessity for immediate and spontaneous ruling.

The initial response of the United States Attorney in California to the petition to vacate the judgment was:

> The Respondent herein, respectfully submits that at an evidentiary hearing we will be able to establish that all of the evidence utilized in the obstruction of justice trial of Marvin Cole was obtained from legal sources, and that the conviction should remain undisturbed. In sustaining this burden, the United States will prove that all evidence used in the trial was obtained from an independent source, and is not in any way tainted by the trespassing microphone.

Judge Westover set a hearing on the petition to be held at a future date to be fixed upon motion of counsel and this was eventually set for May 24, 1971. Three days before that date, on May 21, 1971, the government filed a withdrawal of its opposition to the petition for the stated reasons that it had reviewed additional records since the filing of the petition and had concluded that the government "cannot sustain its burden of proof in this matter". Accordingly, on the government's consent, the 1963 conviction for obstruction of justice was vacated and the indictment dismissed on May 21, 1971.

Three facts must be clearly borne in mind herein. The first is that the defendant's introduction of the sentencing remarks of Judge Westover, in an attempt to collaterally impugn the California testimony of the witness Benton, opened the door for what transpired thereafter. Moreover, Judge Westover's remarks, introduced by the defendants themselves, clearly indicated in the context in which they were presented to the jury here, that Cole had been found guilty. The government did no more than to confirm, by offering the conviction, an inference of guilt which the defense had itself plainly put before the jury.

The second is that the tax treatment of Cole's California legal fees and the expenses incurred by him in the obstruction of justice prosecution was only one of the many items constituting the tax evasion charge at issue here.

The third is that no attempt was made at any point in this litigation, prior to June 3, 1971, to bring to this Court's attention the pendency of the California *coram nobis* proceeding. The petition to vacate the California conviction was served on or about November 3, 1970, two months before the trial of this case commenced. No mention of the pendency of the California proceedings was made to this Court before, during, or after the trial or during the post-trial suppression hearings held in March, 1971, and it was not until the present motion to set aside the verdict and for a new trial was filed with the Court on June 3, 1971, that the matter was brought to this Court's attention. Cole did not seek any immediate relief in

either California or New York to forestall possible use of the California conviction in the New York case; nor did he seek a continuance of the New York trial on the ground of the pendency of the California proceedings. He did seek a continuance to afford his new trial lawyer more time to prepare, a ground which was rejected.

For the reasons explained hereafter, the motion for a new trial must be and is in all respects denied on the law and as a matter of the Court's discretion. The invalidation of the 1963 conviction neither excused Cole's non-appearance as a witness here nor does it taint the January 14, 1971 conviction of the defendants for tax misconduct. The evidence of the California conviction, the door to which defendants had opened, was properly used and received at the trial. Moreover, the evidence of the defendants' guilt of tax evasion and perjury was clear and overwhelming. The fraudulent deductions and omissions proliferated apart from and even completely ignoring the California expenses. If there was any error, it was harmless. "On the record the jury could hardly have brought in any other verdict." United States v. Apuzzo, 245 F.2d 416, 418 (2d Cir.), cert. denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957).

### I.

The defendants' first contention is that the Court erred in allowing the government to bring out the fact of Cole's conviction on its re-direct examination of Ball. The government correctly argues in response that the obstruction of justice conviction was received in evidence for the "limited purpose . . . to show that the jury credited Benton [in contrast to Judge Westover's reflection on Benton's credibility]." The government also suggests that Ball's description of the California trial suggested that, rather than seeking to obstruct justice, Cole was acting as Benton's friend in telling the latter not to testify—in effect evidence of Cole's good character. Under these circumstances, Benton's testimony and, in the course of events, the conviction, were admissible.

■ Ordinarily, proof of a prior conviction can be used only to impeach a defendant *after* he has taken the stand.[3] However, there are a large number of cases which permit otherwise inadmissible evidence to be introduced once the defendant opens the door by his own actions at trial.[4]

Three cases in this Circuit bear importantly on the issue raised by defendant. In United States v. Owens, 271 F.2d

3. Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509, 510 (D.C.Cir.1966); United States v. Smith, 283 F.2d 760, 763 (2d Cir. 1960), cert. denied, 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815 (1961); United States v. James, 208 F.2d 124 (2d Cir. 1953); United States v. Modern Reed and Rattan Co., 159 F.2d 656, 657–658 (2d Cir.), cert. denied, 331 U.S. 831, 82 S.Ct. 37, 7 L.Ed.2d 26 (1947); United States v. Verra, 203 F.Supp. 87, 89–90 (S.D. N.Y.1962) (Weinfeld, J.). Cf. United States v. DeCicco, 435 F.2d 478, 483 (2d Cir. 1970).

4. See e. g., Kayser v. United States, 394 F.2d 601, 606 (8th Cir.), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206 (1968) (defense attorney's cross-examination of police officer opened the door for testimony on government's re-

direct that defendant had originally been arrested on suspicion of auto theft); Babb v. United States, 351 F.2d 863, 867 (8th Cir. 1965) (redirect examination by the government, designed to counter defense theory of improper interrogation, brought out fact that defendant had been questioned about "other matters". This was proper response within doctrine of "verbal completeness"); Vincent v. United States, 337 F.2d 891, 897 (8th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965) (defendant's allegedly tainted confession first brought out on defense cross-examination of government witness, thereby "invit[ing] admission into evidence" of the confession in its entirety.); Newman v. United States, 331 F.2d 968, 972–973 (8th Cir. 1964), cert. denied, 379 U.S. 975, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965) ("[D]efense counsel [on direct examination of defendant] opened [defendant's] entire criminal record, including evidence of conviction

425 (2d Cir. 1959) (per curiam), cert. denied, 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed. 2d 863 (1961), the defendant testified on direct examination that he was not a drug peddler. The Court of Appeals held that it was proper to permit the government to ask the defendant on cross-examination if he had recently been convicted of violating the narcotics laws, although the appeal of that conviction was still pending; under these circumstances the Court declined to re-examine the general issue of admissibility of evidence of conviction while appeal is still in process.

In United States v. Novick, 124 F.2d 107 (2d Cir.), cert. denied, 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212 (1942), defendant in a prosecution for evasion of the distilled spirits tax sought to explain his relationship to other defendants by testifying that "he played the numbers", and policy slips found in his possession were admitted into evidence without objection. The government then called a city detective who testified—as an expert —that the slips were those normally used by a "policy banker" rather than by a "player". The Court of Appeals held that an objection to this latter testimony was properly overruled by the trial court:

> Here appellant himself had pretty thoroughly opened the matter. * * * If in rebuttal it was established that appellant was a numbers banker, the jury might infer a different relationship and thus discount his protestations of innocent friendship. Certainly some leeway must be accorded the prosecution in offsetting the effect of original testimony of appellant. [Even if the jury might have concluded that

appellant was a criminal] it is at most but a step beyond what appellant himself advanced; for playing the numbers itself appears to be a crime—a misdemeanor. 124 F.2d at 109.

Finally, in United States v. Apuzzo, 245 F.2d 416 (2d Cir.), cert. denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957) appellant did not testify, but his counsel sought to withdraw a question posed on cross-examination of a government agent when it became apparent that the agent's testimony would include a statement by appellant of his prior criminal record. The officer was allowed to complete his testimony and stated that appellant had been arrested "for policy" some fifteen years earlier. The Court of Appeals, sitting en banc,[5] upheld the conviction against the contention that allowance of this answer constituted reversible error. Chief Judge Clark, writing for himself and Judge Medina, commented that:

> [H]ad the prosecution, on redirect, asked for the full conversation—to avoid prejudice to the government from having suggested a black mark it could not support—it would have been proper, indeed almost necessary, that the judge admit the testimony. This is the familiar doctrine of 'Verbal Completeness,' * * * and is designed to prevent limitation of evidence to warp the truth and confuse the jury. Where the testimony necessary to complete the story is hearsay or other excludable matter the trial judge has discretion in deciding whether or not to permit completion. 245 F.2d at 422.[6]

---

in the process of appeal, for the jury's consideration" with respect to defendant's credibility.) Cf. United States ex rel. Mitchell v. Pinto, 438 F.2d 814 (3d Cir. 1971) ("indirect, limited reference [by prosecutor to accused's failure to testify] has at times been viewed as harmless, particularly if defense counsel has already brought the accused's silence to the attention of the jury." 438 F.2d at 818.)

5. Judges Hincks and Waterman concurred in the result on the ground that the error was not prejudicial. Judge Frank had

died before the opinion was finalized, but Judge Waterman indicated that Judge Frank would have voted to reverse the conviction.

6. Judge Clark noted that in contending that he should be allowed to withdraw the question, defense counsel had made no reference to fear that the testimony would include reference to an earlier conviction, although in fairness this may have been obvious in any event from the answer given before the request to withdraw was made. In the present trial, on the other

As Judge Clark indicated in *Apuzzo*, situations such as the present one are often dealt with under the doctrine of Verbal Completeness.[7] Once the defendant opened the door, he could not be heard to complain that in order to give the jury a more complete view of the California proceeding, the government used otherwise inadmissible evidence. Here, the government introduced evidence of the conviction in order to counteract statements by which the defense hoped to show that the litigation was business-oriented, by impugning the testimony of the witness Benton in California.[8]

■ Conceivably, the defendants would choose to follow a different trial strategy in the event of a retrial, but that is not a factor here. The sole issue is whether the government had the right to complete the picture begun by the introduction of Judge Westover's comment at sentencing, and that issue is resolved, as it was at trial, in favor of the government.

II.

■ Defendant claims that, once the California conviction was before the jury, he was barred from taking the witness stand in his own defense for fear that the opportunity for cross-examination would cure what he claims was the earlier error. To place this contention in its proper factual context, it should be understood that no attempt was made to notify the Court of the possible invalidity of the California conviction for whatever effect that might have had on the ruling admitting the conviction as part of the government's re-redirect examination of Ball, or on a subsequent ruling as to the proper scope of cross-examination if Cole were to testify.

The Court finds that there was no notice given to this Court by anyone that the California judgment was under attack until some months after the trial was concluded. None of the former or present participants in the case suggests anything to the contrary, except Mr. Smith, a former attorney of record. He claims to have heard his substitute, Mr. Greene, the trial counsel, tell the Court in an undated robing room conference during the course of trial that there was a proceeding pending in California to set aside Cole's conviction. No other person present at that time has any such recollection; nor has anyone produced any memorandum or note stating that

---

hand, no attempt as made to inform the judge of the potential invalidity of the California judgment.

7. See, United States v. Corrigan, 168 F. 2d 641 (2d Cir. 1948) ("The doctrine of 'opening the door' is an application of the principle of 'completeness'; that is, if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary." 168 F.2d at 645. Conviction in this case was reversed because there was no showing by the government of either "incompleteness" or "adverse effect.") United States v. Fayette, 388 F.2d 728, 733 (2d Cir. 1968) (Prior consistent statement of government witness admissible "in order to dispel any inference that the prosecution had on the very eve of the trial brought pressure to bear [on the witness] to give false testimony. In other words, the principle here applicable is the fundamental principle of completeness, *lest a partial view of the complete picture bring about an unjust result.*") (emphasis added).

8. "Even if the evidence had been far more liable to improper use than it was, 'As we have so often held, evidence relevant to the proof of one crime is not incompetent because it discloses the commission of another.' United States v. Eury, 268 F.2d 517, 520 (2d Cir. 1959) * * * True, the trial judge should, in an exercise of sound discretion, exclude evidence tending to show the commission of other crimes 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" United States v. Kahaner, 317 F.2d 459, 471–472 (2d Cir.), cert. denied, Keogh v. United States, 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65 (1963).

such a representation was made to the Court.

Although five people were present at the conference to which Mr. Smith refers —Mr. Greene, his associate Mr. Udell, Mr. Smith, Mr. Shaw (the Assistant United States Attorney handling the litigation), and the Court, no one except Mr. Smith recalls any mention of the California proceeding. Mr. Greene does not recall making the statement attributed to him, and Mr. Shaw also denies any memory of such an incident.

The proceedings in open court even more strongly belie the Smith claim. No effort of any sort was made during the trial to exclude evidence of the conviction on the ground that it was under attack in California. Post-trial suppression hearings were held beginning on March 24, 1971, almost two months after Judge Westover had ordered a hearing on the *coram nobis* petition, but defendants still made no mention of the petition. There is no contention to the contrary.

### III.

As noted above, the defense argues that Cole was advised not to testify for fear that his cross-examination as to the California conviction would cure whatever reversible error might have occurred during the examination of Ball. It is further argued that Cole's failure to testify harmed all of the defendants, because his testimony would have exculpated everyone.

Regardless of the rule that might be applied when a defendant is cross-examined as to a prior conviction pending a *coram nobis* application or appeal of that conviction and the conviction is subsequently overturned, defendants' claim of concern about this issue faces the factual obstacle that they did not see fit to inform the Court that a *coram nobis* application was pending and that a dilemma

was thus raised in the event Cole testified.[9] In fact, Cole's counsel had told Judge Westover unambiguously a few days before commencement of the New York trial that Cole was not concerned about possible use of the conviction to impeach his testimony in New York. Because of the disclaimer of any need for accelerated action, Judge Westover specifically declined to make an "immediate and spontaneous ruling."

In short, defendants' contention that Cole was kept from the witness stand for fear that his availability for impeachment would cure any earlier error completely ignores the fact that no effort was made to apprise the Court of the problem or to seek a continuance until the status of the California conviction was ruled upon by Judge Westover.

Defendants rely heavily upon Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). That case involved the admission of a prior conviction that was invalid upon its face because the judgment stated that petitioner had not been represented by counsel. In the instant action, on the other hand, the conviction was presumptively valid in the absence of any disclosure of what was happening in California.

In a similar situation, the Second Circuit refused to reverse a conviction despite introduction of a post-indictment statement made without counsel—an error of constitutional dimensions—solely because the defendant failed to specify in his objection to admission of the statement the "issues on which he now seeks to rely." The Court reasoned that a specific objection would have permitted the trial Judge to correct the error and thus avoid the necessity of further proceedings including a new trial. United States v. Indiviglio, 352 F.2d 276, 279–280 (2d Cir. 1965) (en banc), cert. de-

---

9. Nor did counsel for the defense mention the possible defect in the earlier judgment in arguing their objections to admission of the conviction in the course of the Ball examination, although the *coram nobis* petition had been filed two months earlier.

nied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed. 2d 663 (1966).[10]

### IV.

Nor can the defendants be heard to argue that the government suppressed facts indicating that the California conviction was invalid. The allegedly suppressed evidence here involved not an ultimate fact but rather facts indicating that the 1963 conviction would be invalidated in 1971 after the New York trial had been concluded. The voiding of the California conviction was in fact based on information not fully evaluated by either side, after Cole first learned in the fall of 1970 that there had been illegal surveillance in connection with the 1963 prosecution. It is not clear that the government could have told Cole that the conviction would be quashed even if it had desired to do so, since it was not until the spring of 1971 that the government itself learned of the full extent of the surveillance that had occurred in connection with the California conviction.

In addition, Cole knew that his *coram nobis* petition was pending, and he was on notice as to the potential existence of illegal surveillance. Again, he could have moved for a continuance pending resolution of the *coram nobis* proceeding or moved to bar the initial introduction of evidence of the conviction. This is not a case where the defendant knew nothing of the possible invalidity of the conviction prior to the present trial.[11]

Moreover, there is no indication in the record here or in the California proceedings that the government's consent to the vacating of the 1963 judgment was predicated on the intrinsic merits of Cole's contentions with respect to illegal surveillance. The government's consent may well have been predicated on the unavailability of witnesses to meet the charges —as suggested by Judge Westover—or on other factors collateral to the merit of Cole's arguments. The government had previously announced that there was no substance to the attack on the conviction. It added only that it could not prove what it had asserted; there was no concession that the attack on the judgment was meritorious.

### V.

■ Finally, the Court finds that any error which may have occurred was harmless and guilt of tax evasion and perjury unquestionable. The list of items improperly deducted as corporate expenses and omitted from the income tax returns is set forth in Government Exhibit 100. The items of deduction include:

(1) Purchases of suits and sport clothes for defendants Fischer and Cole for which a custom tailor, Joseph Bevacqua, received biweekly checks of $150 during 1963. These checks were recorded in the cash disbursements book of the corporation as payments to an account

---

10. Cole does not claim that he was forced to testify to attempt to refute earlier testimony. *Cf.* United States v. Modern Reed and Rattan Co., 159 F.2d 656, 658 (2d Cir.), cert. denied, 331 U.S. 831 (1947); United States v. Rosse, 418 F.2d 38, 41–42 (2d Cir. 1969), cert. denied, 397 U.S. 998, 90 S.Ct. 1143, 25 L.Ed.2d 408 (1970). He says that but for the conviction he would have testified. If such a decision was made as a matter of trial strategy it is difficult to understand why counsel did not seek the aid of the Court by way of a continuance or request for evidentiary ruling at trial, to allow Cole to testify. In this regard, the Court is mindful of the statement of the Second Circuit in United States v. Five Cases of Figlia Mia Brand of Oil,

179 F.2d 519, 523 (2d Cir.), cert. denied, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950) that "The victim of alleged prejudice cannot be allowed to nurse it along to the point of reversibility and then take advantage of a situation which by his silence he has helped to create."

11. *Cf.* United States v. Polisi, 416 F.2d 573, 576–577 (2d Cir. 1969). "The evidence must have been discovered since the trial; * * * it must be of such a nature that it would probably produce a different verdict in the event of a retrial." Thus even if the voiding of the California conviction is denominated "evidence" it does not satisfy these two criteria on a motion for new trial. See part V of this opinion, immediately *infra*.

executive; each check was charged to travel and entertainment.

(2) Sulka ties made to Marvin Cole's special size. Fischer also bought such ties in May, 1963, all of special length.

(3) Travel expenses for Cole's wife and minor daughter from Los Angeles to Honolulu.

(4) Expenses of a stay at Kutshers Country Club, a Catskill Mountain resort, incurred by Fischer, his wife and his minor son and daughter.

(5) Expenses of a stay at Grossinger's Hotel, another Catskill resort, during the Christmas and New Year's holidays incurred by the Fischers, their minor son and daughter.

(6) Expenses of the Bar Mitzvah of Fischer's son at the Hotel Astor in New York City, including cost of musicians employed for the affair. Expense of the Bar Mitzvah of Cole's son charged as salary of Cole and Fischer.

(7) Expenses of a stay at the Americana Hotel in Miami Beach, by Mrs. Cole and her minor son and daughter including expense of bathing suits charged to the bill.

(8) Expenses of a trip to and three or four week stay at the Americana Hotel by Cole's father and mother, recorded as expenses of Mr. and Mrs. Cole. The father's name actually is Milton Cohen, not Marvin R. Cole.

(9) Expenses of a "Sweet Sixteen" party in California for Cole's daughter, including the cost of catering, florist, and equipment supplied.

(10) Cost of airline fares for Mrs. Fischer involving trips to or from Miami, Chicago, Vermont, and New York City.

In addition to the foregoing examples, the evidence established omissions from reportable income and manipulations of the corporate bookkeeping system.

The charge that defendants knowingly, deliberately and wilfully took the opportunity to defraud the government by claiming as business deductions expenses which they knew were of a completely personal nature was established beyond a reasonable doubt. The California legal fees were merely one more of the items on which the jury could rely if it chose so to do.

In short, disregarding the California expenses entirely, "the evidence would not have probably produced an acquittal" and "a new trial would be most unlikely to produce a different result." United States v. Sposato, 446 F.2d 779, 782 (2d Cir. 1971).

Accordingly, in the exercise of the Court's discretion and on the basis of the facts and the law, the motion to vacate the verdict of the jury and for a new trial is, in all respects, denied.

So ordered.