**UNITED STATES of America,
Plaintiff,**

v.

**Marvin R. COLE et al., Defendants.**

**No. 69 Cr. 827.**

United States District Court,
S. D. New York.

Dec. 6, 1972.

Millard & Greene, Saxe, Bacon, Bolan & Manley, New York City, for defendants, by Roy M. Cohn, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, by John W. Nields, Jr., Asst. U. S. Atty., for plaintiff.

POLLACK, District Judge.

Defendants move pursuant to Rule 33 Fed.R.Cr.P. to set aside their convictions of engaging in income tax frauds and of conspiring to do so and for a new trial upon the ground of newly discovered evidence.

## I.

This is defendants' third attempt to win a dismissal or a new trial. The earlier moves were rejected in opinions herein, reported at 325 F.Supp. 763 and 334 F.Supp. 961 and those rulings were specifically reviewed and sustained on the appeal from the convictions which were affirmed, United States v. Cole, 463 F.2d 163 (2d Cir.1972), cert. denied, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972).

The first attack on the prosecution was under Fed.R.Cr.P. 41(e) seeking a dismissal on the grounds that the "saturation" tax investigation leading to the indictment stemmed from illegal electronic eavesdropping. After a four day hearing (held after the jury's verdict), this motion was denied. Among other things, it appeared clearly that the acts for which the defendants were prosecuted were, with one minor exception, not committed until after the illegal electronic surveillance was terminated. As stated by this Court: "By definition, the illegal 'bugs' in this case could not have picked up in 1961 and 1962 leads or other information dealing with violations of federal law in future tax years." And, "While the government's breach of the defendants' constitutional right to be free of illegal searches and seizures is reprehensible, such illegality by the government does not fortuitously give the defendants a license to break the law thereafter with impunity." 325 F.Supp. at 769. In this connection it was further pointed out that: "The rule contended for by defendants would be tantamount to lifetime exoneration from tax accountability for future tax evasion in any general category of deductions or income touched upon through an illegal surveillance. A rule of reason and common sense precludes such a far fetched consequence". *Id.*

Responsive to defendants' principal argument, this Court found as fact that, "The government was not motivated to 'focus' on the defendant Cole by tainted information—or to state it another way, there was no tainted decision to focus taxwise on the defendant Cole", (*Id.* at 770) and "beyond a reasonable doubt that the proof used in the trial was free of any taint of illegality." *Id.* "The significant evidence in this case was all of independent origin. There is no reasonable possibility that a substantial portion of the case is tainted." (*Id.* at 771)

The validity of the prosecution and the evidence used on the trial were affirmed on the appeal to the Court of Appeals from the convictions. Chief Judge Friendly wrote:

"we find that the Government proved that the evidence resulted from the legal saturation investigation, rather than from any illegal information as to personal expense accounting. . . . [K]nowledge of the facts on which these defendants were convicted of income tax evasion in 1963 and 1964 was 'gained from an independent source.' Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920)." 463 F.2d at 174.

A petition for a rehearing containing a suggestion that the action be reheard en banc failed to evoke a request from any active judge that a vote be taken on that suggestion and upon consideration thereof the petition for a rehearing was denied.

One of the questions then presented by the defendants for the issuance of a writ of certiorari from the Supreme Court, as phrased and argued by the Solicitor General, was:

"2. Whether the government's evidence in this case was tainted by illegal electronic surveillance".

As stated previously, a writ of certiorari was denied.

The second attack by the defendants sought a new trial on the ground that the admission on the trial into evidence of a prior conviction deprived defendants of due process of law because that conviction was invalidated on constitutional grounds after the trial of this case was concluded. That matter has no bearing on the present motion.

In this third attempt to void the convictions the defendants have returned to their earliest effort, namely, to establish that the government's evidence and proceedings stemmed from a tainted source. In short, they offer more of the same type of proof, recently obtained, to show that the motivating force in the "saturation" investigation was the illegal electronic surveillance. On the findings made by this Court and by the Court of Appeals, mentioned above, the cumulative evidence now being offered is beside the mark since the affirmed findings are that the government proved that the evidence actually used on the trial in respect to the 1963 and 1964 income tax returns resulted from the legal saturation investigation made in 1965 which actually was caused by, sought and obtained on information which had come to the government from an independent legal source, one Joel Benton. Exhibit 22 on the suppression hearing, a copy of which is appended hereto, gives clear and cogent evidence of the cause of the saturation investigation.

Nothing presented here by the defendants impairs those findings or warrants a further hearing as will be seen from the following factual analysis.

## II.

The thrust of the present motion is that the government illegally obtained information of the very pattern of conduct charged in the indictment and that its decision to focus on Cole was tainted.

The findings made heretofore are that the California Assistant United States Attorney, Benjamin Farber, who requested the Internal Revenue Service investigation on October 3, 1962, had no knowledge of the illegal bug and acted principally on information not deriving from the illegal bug.

To impugn those findings the defendants present here certain "airtels" which they obtained from the government after the suppression hearing but prior to their argument of the appeal herein. The "airtels" referred to are written communications which passed between the Director of the FBI and the Los Angeles FBI office between August 10th and September 5th 1962. It is contended that the airtels evidence that Farber's written request for an IRS investigation was fabricated to mislead a Court into thinking that the government's decision to focus on Cole's income tax matters was not tainted. The defendants contend that Farber's formal October 3, 1962 request for an investigation and the November 1969 income tax indictment did not stem from an untainted independent legal source, i. e., information from Joel Benton, but were in pursuance of information which had been come at illegally.

The airtels in question self evidently relate to the California inquiries into obstruction of justice and perjury before California grand juries and the taint

conceded to exist therein; they do not shed new light on the genesis of or the independent investigation leading to the New York income tax indictment.

Mr. Farber, an assistant United States attorney stationed in California and involved in the investigation and prosecution of organized crime activities, requested a "saturation" tax investigation of Cole by the Internal Revenue Service, on the basis of information from Joel Benton, an untainted source, to endeavor to establish hidden and illegal ownership interests in and control of Las Vegas gambling casinos and the skimming of profits therefrom. Cole was believed to be the "deputy" for such undisclosed interests held by one Joseph "Doc" Stacher, believed to be a high figure in organized crime. Benton had told Farber that Cole owned hidden interests in Las Vegas gambling establishments and that men from the hotel frequently delivered unreported "gravy money"—in six figure amounts—to Cole, Fischer & Rogow, Inc. No such information had been produced by electronic surveillance. (*See* 463 F.2d at 172). The request for the saturation investigation contained no reference to Cole taking deductions for personal expenses.

The present contentions of the defendants with respect to focus and taint are not new in this case; they were heretofore argued extensively on the facts and the law. The airtels neither support the defendants' contentions nor would they change the result reached by this Court on the suppression issue in view of the direct evidence on the issue and the Court's resolution of the issue of credibility.

Semantic cavil alone contradicts the substantial showing by the government that the illegal knowledge of the government in fact played no material part in the decision to focus on Cole's income taxes and the discovery of the 1963 and 1964 acts. The government did actually discover the acts for which defendants were prosecuted in a legal manner,

on the basis of information legally obtained and the airtels now presented do not and would not have caused the Court to make any different finding.

The airtels were fully exploited by the defendants in their Reply Brief on the appeal to the Court of Appeals and again in their petition and Reply Brief for certiorari from the Supreme Court. They were even printed *in extenso* in that petition, and the points made there, unsuccessfully, are those now again urged.

In short, the factual cause of the "saturation" investigation and the facts discovered and used therefrom were untainted. The airtels, at best, are merely cumulative or impeaching; they merely amplify and reiterate points made at the taint hearing and passed upon by this Court at that time. The "new" evidence is not of such a nature as requires a new hearing herein; it would not produce a different result on the suppression of evidence issue heretofore passed on.

The motion is, in all respects, denied.

So ordered.

### APPENDIX

### SUPPRESSION HEARING
### EXHIBIT 22

October 3, 1962

Honorable Mortimer M. Caplin
Commissioner
Internal Revenue Service
Washington 25, D.C.

Dear Mr. Caplin:

This Division has received information that Marvin Robert Cole, 813 North Bedford Drive, Beverly Hills, California, is closely associated with Joseph "Doc" Stacher, a notorious Los Angeles hoodlum. Cole heads the advertising firm of Cole, Fischer, and Rogow, Inc., 9033 Wilshire Boulevard, Beverly Hills, California. He is also President and Chairman of the Board of Directors of the

firm known as Candygram, which company has a contract with Western Union Telegraph for the delivery of candy by wire.

Reliable sources have alleged that Cole acts as Stacher's representative in connection with a reported undisclosed interest held by Stacher in gambling at the Sands Hotel, Las Vegas, Nevada. This information has been developed by the Federal Bureau of Investigation, and the United States Attorney's office in the Southern District of California. With regard to the latter, members of the United States Attorney's Special Prosecutions Group is currently conducting a Grand Jury probe into the undisclosed interest referred to.

It is noted that your Intelligence Division is also investigating Stacher and that particular emphasis is being placed upon his alleged interest in Nevada gambling. In light of this fact, and information relating to Cole's activities, it is requested that a satellite investigation be initiated by your Service to determine whether Cole or others acting in collusion with him have violated any Federal criminal tax statutes. It is also requested that the investigation be assigned a National Office Identification Number under the Organized Crime Drive and that the special procedures called for under Internal Revenue Service regulations be applied.

In view of the current Grand Jury inquiry in the Southern District of California, interviews of individuals in the Los Angeles area should be discussed with Assistant United States Attorney Benjamin S. Farber, Los Angeles, before they are conducted by your Intelligence Division.

For your information, additional details concerning Cole's activities may be obtained from Mr. Farber and the Federal Bureau of Investigation.

> Sincerely,
>
> Herbert J. Miller, Jr.
> Assistant Attorney General