Marvin R. COLE, Plaintiff,

v.

Frank C. KELLEY, director, Federal Bureau of Investigation, et al., Defendants.

Civ. No. 73-2322 LB.

United States District Court, C. D. California.

Sept. 2, 1977.

Michael Kennedy, San Francisco, Cal., Peter J. Marx, Beverly Hills, Cal., for plaintiff.

Richard L. Fruin, Jr., of Lawler, Felix & Hall, Los Angeles, Cal., for defendant Pacific Tel. & Tel. Co.

Robert L. Brosio, U. S. Atty., James Stotter, II, Barry J. Trilling, Asst. U. S. Attys., Los Angeles, Cal., for all other defendants except Joel R. Benton.

## MEMORANDUM OPINION ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT—STATUTES OF LIMITATION

BREWSTER, District Judge.

The following motions are before the Court:

1. Motion of Pacific Telephone and Telegraph Company (Pacific Telephone) to dismiss the plaintiff's action against it pursuant to Rule 12(b), F.R.Civ.P. on the ground

that such action is barred by certain statutes of limitation.[1]

2. Motion of the personal defendants, except Joel R. Benton,[2] to dismiss the complaint against them pursuant to Rule 12(b), F.R.Civ.P., or in the alternative for summary judgment pursuant to Rule 56, F.R. Civ.P., on the ground that the plaintiff's claim is barred by certain statutes of limitation.

■ The affirmative defense of limitations may be properly presented by motion for summary judgment, even though it does not appear on the face of the pleadings. *Suckow Borax Mines Consol. v. Borax Consolidated*, 9 Cir., 185 F.2d 196, 205 (1950), cert. den. 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680.

The Court was of the opinion that the motions should be treated as motions for summary judgment pursuant to Rule 12(b); and, after having held a full hearing on them, concludes that summary judgment should be entered for each of the moving defendants on the ground that plaintiff's claim is barred by the statutes of limitation hereinafter set out.

Additional grounds for dismissal are urged by some of the defendants, but the result reached from the Court's ruling on the limitations question makes it unnecessary to discuss them.

Plaintiff's cause of action is based upon unauthorized electronic surveillance of him by government officers and agents, and the use of the information thereby obtained to convict him in his federal court trials in Los Angeles in May, 1963, for obstruction of the due administration of justice, and in New York in January, 1971, for violations of the income tax laws, and upon the concealment by the defendants of such surveillance until on or about August 10, 1970. He alleges that the surveillances were accomplished by implanting electronic devices in his Beverly Hills, California office at intervals during the period from May, 1961, to and including August 29, 1962, and in a room at the Holiday Inn, Marion, Ohio, in June, 1964, where he was present. He further alleges that the defendants conspired to commit such acts and make such use in violation of his constitutional, statutory and common law rights.

The defendants, Edward Levi, former Attorney General of the United States, and Frank C. Kelley, Director, Federal Bureau of Investigation (FBI), were not in those respective offices at the time the acts complained of by plaintiff were committed. William P. Rogers and Robert F. Kennedy were each Attorney General during some of that time. The plaintiff has been in the habit of dismissing an Attorney General when he went out of office and substituting his successor as a defendant. The failure to do this when Mr. Levi ceased to be Attorney General appears to have been an oversight. The other personal defendants and the respective capacities in which they are alleged to have been acting are:

Herbert J. Miller, Jr., Assistant Attorney General, Criminal Division, and William Foley, Acting Assistant Attorney General, Criminal Division.

Francis C. Whelan, United States Attorney at Los Angeles.

Thomas R. Sheridan, Timothy M. Thornton, and Benjamin S. Farber, Assistant United States Attorneys under Francis C. Whelan.

William G. Simon, Inspector and Special Agent in Charge of the Los Angeles Field Office of the Federal Bureau of Investigation (FBI).

William J. Nolan, Howard Zellers, Earl F. Dudley, L. H. Dudley, Sam K. Mitchell, J. L. Mahan, Gary Powell, Robert F. Jacobs, and R. J. Dobens, Special Agents, FBI. Robert K. Lund and Frances S. Sullivan, Internal Revenue Service (IRS) Agents.

1. The specific statutes of limitation relied upon by each of the moving defendants are identified by them, and will be set out, where necessary, in the discussion of the limitation questions.

2. Joel R. Benton is the only personal defendant who was not acting in some official capacity with the federal government during the period covered by this litigation. Plaintiff claims he was an informant. He has never been served with process herein.

Joel R. Benton was, as has been pointed out in a footnote above, an individual in private life who is alleged to have entered into a scheme with the other defendants to entrap the plaintiff and to testify against him before two Los Angeles federal grand juries and at trial.

Pacific Telephone is alleged to have leased or rented to defendants audio cable equipment which enabled conversations picked up by the implanted electronic devices to be heard at a distance from the places where they were spoken.

General Telephone & Telegraph Co. was dismissed by plaintiff before the hearing on the motions.

Based on such unauthorized electronic surveillance, the use thereof, and the alleged illegal conspiracy of the defendants to commit such acts and make such use, the plaintiff asserts three separate claims in his amended complaint:

1. The defendants' actions were an invasion of plaintiff's federal constitutional rights: to be secure in his person, house, papers and effects (Fourth Amendment); to be free from deprivation of his liberty and property without due process of law (Fifth Amendment); to effective assistance of counsel and to confrontation (Sixth Amendment); and to privacy (First Amendment).

2. The actions of the defendants were a violation of 18 U.S.C. §§ 2510–20, "and of related and predecessor litigation", giving plaintiff "a civil cause of action under 18 USC 2520."

3. The actions of defendants violated Article 1, Section 19, of the California Constitution, the California Penal Code, "and the law of California defining the torts, among others, of trespass, abuse of process, deceit, interference with prospective advantage and negligent infliction of physical and mental harm." [3]

The plaintiff prays for legal and equitable relief.[4]

Rule 56, F.R.Civ.P., provides in pertinent part that a motion for summary judgment shall be granted if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"The [object] of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Scarboro v. Universal C.I.T. Credit Corporation*, 5 Cir., 364 F.2d 10, 15 (1966). See also *United States v. Gossett*, 9 Cir., 416 F.2d 565, 567 (1969).

The sources from which the Court must get the facts to act on the motions for summary judgment are: admissions in the plaintiff's pleadings; the depositions of plaintiff and of Patrick M. Wall, one of his attorneys in his case in New York involving violations of the federal income tax laws; the plaintiff's answers to the defendants' Request for Admissions; affidavits of Harlow M. Huckabee, a trial attorney in the Department of Justice, and of John P. Gildea, a Special Agent of the IRS; and documents attached to any of the above or on file herein. The Court may also take judicial notice of the proceedings and fact findings in related cases involving Cole to the

3. The quotation is from paragraph 4C of the amended complaint. The plaintiff claims that the acts alleged were torts under such provisions of the California Constitution, the California Penal Code and the California common law.

4. The following specifically describes the relief prayed for:

1. $4,500,000.00 actual damages and $9,000,000.00 exemplary damages.

2. An injunction enjoining the defendants "from ever attempting to entrap him into the commission of a crime and from ever infringing his rights under 18 U.S. Code Sections 2510–2520, and the First, Fourth, Fifth, Sixth and Ninth Amendments to the United States Constitution, and Article 1, Section 19 of the California Constitution."

3. An injunction requiring the defendants to turn over to the plaintiff, or in the alternative deliver into the custody of the Court, all records developed by, or as a result of, the alleged unlawful electronic surveillance.

4. An order appointing a special prosecutor to conduct an investigation of the alleged criminal conduct of defendants, and any prosecution therefor.

5. Attorneys' fees.

extent that the issues presented here were there litigated. *St. Paul Fire & Marine Ins. Co. v. Cunningham*, 9 Cir., 257 F.2d 731 (1958); *Lambert v. Conrad*, 9 Cir., 308 F.2d 571 (1962); *Granader v. Public Bank*, 6 Cir., 417 F.2d 75, 83 (1969), cert. den.[5] 397 U.S. 1065, 90 S.Ct. 1503, 25 L.Ed.2d 686; *Paul v. Dade County, Florida*, 5 Cir., 419 F.2d 10, 12 (1969),[6] cert. den. 397 U.S. 1065, 90 S.Ct. 1504, 25 L.Ed.2d 686; *Moore v. Estelle*, 5 Cir., 526 F.2d 690, 694 (1976).

The related cases here are: *Cole v. United States*, 9 Cir., 329 F.2d 437 (1964), affirming Cole's 1963 conviction in Los Angeles for obstruction of justice, opinion by Judge Barnes; *United States v. Cole*, 325 F.Supp. 763 (D.C.1971), *United States v. Cole*, 334 F.Supp. 961 (D.C.1971), and *United States v. Cole*, 351 F.Supp. 795 (D.C. 1972), all opinions of Judge Pollack, United States District Judge for the Southern District of New York, in connection with Cole's income tax violations case tried before him in New York. *United States v. Cole*, 2 Cir., 463 F.2d 163 (1972), cert. den. 499 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193, affirming Cole's conviction in the New York case on five counts charging violations of federal income tax laws, opinion by Chief Judge Friendly. Each one of the claims plaintiff is making here was litigated one or more times in, or in connection with, the New York trial.

The facts herein set forth are established beyond dispute by the sources above mentioned. Cole was the subject of unauthorized electronic surveillance at his Beverly Hills office at intervals during the period from about May 5, 1961, to August 29, 1962. He was also in Room 223, Holiday Inn, Marion, Ohio, during a part of the time it was under unauthorized electronic surveillance about June 24, 1964. All the surveillance involving Cole was by eavesdropping

through the use of a "bug" implanted in the room where the overheard conversations took place. There was no wiretapping. Those conversations in Cole's office were recorded and the government made logs of them. The ones in the Holiday Inn room were not recorded, so there were no logs of them. The only records relating to that eavesdrop are a teletype and an airtel, each dated June 24, 1964. All of the surveillance was conducted by the FBI. The IRS had no part in it, and, during its investigation of Cole, had no knowledge of the information gained by it.

The eavesdropping of Cole was brought about by his misrepresentations to FBI agents working on an organized crime investigation involving, among others, one Joseph "Doc" Stacher, a well-known Los Angeles racketeer. A federal grand jury in Los Angeles was hearing testimony developed during the investigation. One object of the investigation was to determine whether mobsters had acquired any interests in the gambling casinos in Las Vegas. Stacher was suspected of having a hidden interest in the Casino at the Sands Hotel there and of having some kind of close business association with Cole. When the FBI interviewed Cole in early 1961 about his relationship with Stacher, Cole told them that Stacher was at the most only a casual acquaintance, and that he had never had any business relationship with him. He further said that he knew nothing of any business dealings or connection Stacher might have in Las Vegas. He later gave testimony to the same effect before the federal grand jury in Los Angeles. Joel R. Benton (the defendant in the present case who has not been served) was subpoenaed to testify before the grand jury and informed Cole about it. He was a former employee of Cole, Fischer & Rogow, Inc., in the Beverly Hills office, and close enough to

---

5. "Federal Courts may take judicial notice of proceedings in other Courts of record."

and

"We believe that it was appropriate for the District Judge in this case to take judicial notice of the State Court receivership *proceedings and of* Judge Moody's *findings of fact therein*." . . . *Granader*, 417 F.2d, at 82, 83.

6. "*Paul v. Dade County, Florida*, Ct.App.1967, 202 So.2d 833, cert. denied, Fla., 207 So.2d 690, cert. denied, 390 U.S. 1041, 88 S.Ct. 1636, 20 L.Ed.2d 304 is the prior state case and while it was not made a part of the record on this appeal, we may, of course, take judicial notice of it . . . *and of the pleadings therein* . . . ." *Paul*, 419 F.2d, at 12.

have Cole's confidence. Cole tried by improper persuasion and dire threats to get him to agree to "take the Fifth" on any questions relating to Stacher, and told him that everybody in the office was going to do it. Benton did not give in to Cole. Instead, he contacted the FBI, of his own volition, and told them that Stacher came to Cole's office on the average of once a week; that Cole and Stacher were associated with each other in a hidden interest in the Casino at the Sands Hotel; and that large sums of cash, referred to by them as "gravy money", were surreptitiously skimmed off the gambling take, sometimes in six figure amounts, and brought to Cole's office in a black brief case where Stacher divided it with Cole. Benton testified before the federal grand jury then hearing the matters, and again before the succeeding grand jury which took up the investigation where the first one left off. 463 F.2d, at 172, et seq.; 329 F.2d, at 442–445; 325 F.Supp., at 770.

Cole's 1963 conviction for obstruction of justice was based on his corrupt attempts to persuade Benton not to testify, and his threats that followed Benton's indication that he would testify. His penalty was assessed at a $1,000.00 fine.

Eavesdropping of premises under Cole's control ended around August 29, 1962, about eleven months before Cole's conviction for obstruction of justice.[7] The conclusion the FBI reached about Cole was, to put it in the language of Cole and his ilk, that Cole was "Stacher's boy" and his "black satchel man." [8]

A "bug" was also put in the office of the Fremont Hotel at Las Vegas for electronic surveillance of Edward Levinson and Edward Torres. Cole had frequent business dealings with them,[9] and his conversations in their office were overheard on occasions. Cole had an interest in the Fremont in addition to his interest in the Sands.[10]

Stacher was indicted in 1964. 325 F.Supp., at 765. Plaintiff's counsel stated during the taking of plaintiff's deposition that Stacher had been deported.

In October, 1967, there was pending in the federal court at Las Vegas Cr. No. 1561, *United States of America v. Edward Levinson and Edward Torres,* in which the defendants were charged with income tax evasion. On October 2, 1967, the government filed in that case a pleading[11] in response to defense discovery motions setting out the times and places of the unauthorized electronic surveillance of Levinson, Torres and Cole. The surveillances at Cole's Beverly Hills office were shown to have occurred on twenty-two occasions during the period from May, 1961, through August, 1962. The portions of the pleading which are material to this hearing follow:

c. Location of devices:
   (1) Fremont Hotel, Las Vegas, Nevada.
   (2) Holiday Inn, Room 223, Marion, Ohio.
   *    *    *    *    *    *    *
   (5) Marvin Cole, Room 201, 9033 Wilshire Blvd., Beverly Hills, California.

d. Installation date:
   (1) November 1, 1962
   *    *    *    *    *    *    *
   (5) May 5, 1961

h. Logs relating to electronic surveillance conducted at Marvin Cole for the following dates:
   (1) 5–31–61, pp. 1 to 36, incl.

---

7. Room 223, at the Holiday Inn, Marion, Ohio, which was under electronic surveillance about June 24, 1964, was registered to Edward Torres of Las Vegas. Plaintiff was in that room at least part of the time it was under such surveillance.

8. A communication from Herbert J. Miller, Assistant Attorney General to the Commissioner of IRS, included statements that Cole was "closely associated with Joseph 'Doc' Stacher, a notorious Los Angeles hoodlum", and that "Cole acts as Stacher's representative in connection with a reported undisclosed interest in

gambling" at the Sands Hotel in Las Vegas, Nevada.

9. Cole admits this in his deposition.

10. " . . . [A] similar device was illegally implanted and utilized by the FBI in the Fremont Hotel in Las Vegas, Nevada, a hotel in which the defendant Cole then had a proprietary interest." 325 F.Supp., at 764–65.

11. This pleading is attached as Exhibit "E" to the personal defendants' motion to dismiss.

(2) 6–16–61, pp. 1 and 2, "insert" pages 11 to 34, incl., and three unnumbered pages.

(3) 6–18–61, pp. 1 and 2

(4) 7–14–61, pp. 1 and 2, and pp. 1–a to 1–j, incl.

(5) 9–6–61, pp. 1 to 6, incl.

(6) 9–7–61, pp. 1 to 3, incl.

(7) 10–16–61, pp. 1 to 10, incl.

(8) 10–18–61, p. 2

(9) 10–19–61, pp. 1 and 2

(10) 10–26–61, pp. 1 to 5, incl.

(11) 1–2–62, pp. 1 to 4, incl.

(12) 5–14–62, pp. 1 to 8, incl.

(13) 5–15–62, pp. 1 to 4, incl., and p. 7

(14) 5–16–62, pp. 1 to 32, incl.

(15) 5–18–62, pp. 1 to 15, incl.

(16) 6–5–62, pp. 1 to 3, incl.

(17) 6–6–62, pp. 1 and 2

(18) 6–7–62, pp. 2 to 6, incl.

(19) 7–17–62, pp. 1 and 2

(20) 7–18–62, p. 2

(21) 7–20–62, pp. 1 to 3, incl.

(22) 8–6–62, pp. 1 to 5, incl.

Copies of the logs of such eavesdroppings[12] were furnished to counsel for Levinson and Torres on September 29, 1967. One of such attorneys was Thomas Wadden, who also represented Cole as of that date in connection with his tax problems.

Cole claims that the first knowledge he had that he had been the subject of unauthorized electronic eavesdropping was in October, 1967. He testified in his deposition that he got a telephone call in that month telling him about the eavesdropping, and that the call was followed by receipt through the mail of a clipping about it from a Las Vegas newspaper, which said that Cole was one of those so surveilled. That was after the government filed the pleading in the Levinson and Torres tax evasion case setting out the times and places of the eavesdropping. In his deposition testimony, Cole could not say whether it was his friends, Levinson and Torres, who so informed him, as he claimed to have had no recollection of the identity of the source of his information. He testified that he made no effort to find out anything further or to do anything about the surveillance.

On March 7, 1968, Thomas Wadden, Adrian P. Marshall and Seymour Goldfeld, attorneys for Cole, appeared at a formal conference with John P. Gildea, a Group Supervisor in the IRS, in New York City, in regard to Cole's income tax problems growing out of an IRS "saturation" investigation of him. The purpose of the conference was to afford the taxpayer and his attorneys an opportunity to explain at the District level why facts disclosed by the investigation did not show wilful fraud. During the conference, attorney Wadden stated that Cole's office in California had been subjected to illegal electronic surveillance. Marshall mentioned that they had a copy of the document filed in the Las Vegas case. Knowledge of the illegal surveillance was also mentioned to Gildea in telephone conversations—by Wadden on January 30, 1968, and by Marshall on March 12, 1968. These facts were established by Gildea's affidavit, which is not contested by the plaintiff.[13]

On January 28, 1969, Thomas Wadden and Adrian Marshall, attorneys, and Oscar Heningsberg, a certified public accountant, all as representatives in those capacities of Cole, Fischer & Rogow, Inc., and Cole and Fischer, owners of the corporation, taxpayers, appeared at a conference in Washington, D.C. with Harlow M. Huckabee, a trial attorney in the Criminal Section, Tax Division, Department of Justice, regarding possible criminal liabilities of the taxpayers. The following is quoted from Huckabee's memorandum of that conference:

"Mr. Wadden and Mr. Marshall then mentioned that illegal electronic surveil-

---

**12.** This did not include the eavesdropping at the Holiday Inn, Marion, Ohio. It has been pointed out that there was no log of that one.

**13.** The facts in an uncontroverted affidavit must be taken as admitted. Rule 56(3), F.R. Civ.P.: *Morrison v. Walker*, 9 Cir., 404 F.2d 1046 (1968). Under Rule 56(e), legal briefs, oral arguments and pleadings of the party opposing the motion are inadequate to controvert affidavits. *Smith v. Mack Trucks*, 9 Cir., 505 F.2d 1248 (1974).

lance was involved in the case. . . . They further stated that there had been a bug in the Cole, Fischer & Rogow office in Beverly Hills (which was Marvin Cole's office) in 1961 and 1962 and probably longer. In addition, they stated that there was a bug in Torres' room at the Holiday Inn Motel in Marion, Ohio, in June, 1964. They said they were aware of the bug in Cole's office and at the motel because this information had been made available during the Levinson case. . . . "[14]

The claimed taint from electronic surveillance was urged as a reason for not prosecuting Cole, et al.

On November 24, 1969, an indictment was returned into the United States District Court for the Southern District of New York, charging Cole, Fischer and the corporation, Cole, Fischer & Rogow, Inc., with several felonious violations of the income tax laws. Five of the seven counts of the indictment named Cole as a defendant.

Prior to May 26, 1970, Edward M. Shaw, the Assistant United States Attorney charged with the prosecution of the case, delivered to Patrick M. Wall of New York, who had then been employed to represent Cole, et al., in the case, logs of all the electronic surveillance of Cole's office. On a trip to California around August 20, 1971, Wall reviewed the logs with Cole, and urged him to bring an action to vacate his 1963 obstruction of justice conviction.

On November 3, 1970, Cole filed a Petition for Writ of Error Coram Nobis in the federal court in Los Angeles in which he had been convicted for obstruction of justice seeking to set aside the conviction on the ground that the evidence used against him in the trial was tainted by illegal electronic surveillance of him. The government filed an opposition to the petition. In May, 1971, the government withdrew its opposition on the ground that it could not meet its burden of proving no taint. The conviction was thereupon set aside and the case was dismissed.

After a two-week jury trial in January, 1971, Cole was convicted of income tax violations on all five counts against him. He got a sentence of one year and a fine of $5,000.00 on each count, with the prison sentences to run concurrently. He was in custody from January 3, 1973, to June 11, 1973, on the sentence.

Cole charged that the government's evidence against him in the tax case was tainted by the illegal electronic surveillance of his office from May, 1961, to August, 1962, and of Torres' room at the Holiday Inn on June 24, 1964. He raised the question at every opportunity: by motion to suppress in advance of the trial; by objections during the trial; by motion for new trial; by brief and argument in the Court of Appeals; and by petition for certiorari in the Supreme Court. Cole could never get around the fact that, "with one minor exception", the acts for which the defendants were prosecuted were not committed until after the electronic surveillance of Cole was terminated, 351 F.Supp. 796, and that ". . . [K]nowledge of the facts on which these defendants were convicted of income tax evasion in 1963 and 1964 was 'gained from an independent source.'" 463 F.2d, at 176. The case was tried on the theory that Cole and Fischer paid large sums of purely personal expenses out of funds of their corporation, and deducted them as legitimate business expenses on the corporate tax returns. The government did not involve any unreported income from money "skimmed" off the gambling take at Casino. The question of taint was discussed in detail in each of Judge Pollack's three District Court opinions, and in Chief Judge Friendly's opinion for the Court of Appeals. In each instance, the Court rejected all Cole's claims relating to taint. By denying Cole's petition for certiorari squarely presenting the question, the Supreme Court also rejected his claim.[15]

14. The facts are taken from Huckabee's affidavit, not contested, attached as an exhibit to the motion of the personal defendants. It verifies the accuracy of the memorandum.

15. One of the questions presented by the petition for certiorari was:

This suit was filed on October 3, 1973—

over nine years after the last act of illegal electronic surveillance on June 24, 1964;

six years after Cole got the call and received the Las Vegas newspaper clipping in October, 1967, informing him about the illegal electronic surveillance of him;

over five-and-a-half years after his attorneys told Gildea at the tax conference in New York on March 7, 1968, that they had all the information about the electronic surveillance of Cole that had been disclosed by the government in the Levinson and Torres tax case in Las Vegas;

about four years and eight months after his attorneys told Huckabee at the tax conference in Washington, D. C. on January 28, 1969, substantially the same thing they had previously told Gildea;

about three years and six weeks after Cole's attorney Wall had reviewed with Cole around August 20, 1970 the complete logs of all the electronic surveillance here involved.

It is conceded by all parties that there are no federal statutes of limitation, general or special, applicable to the claims here asserted by plaintiff. They also concede that the Court must therefore apply the statutes of limitation for analogous causes of action in the State of California, where this action arose and is pending, in accordance with the rule laid down in *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Smith v. Cremins*, 9 Cir., 308 F.2d 187 (1962); *Almond v. Kent*, 4 Cir., 459 F.2d 200 (1972); *Polite v. Diehl*, 3 Cir., 507 F.2d 119 (1974).

The parties agree that California has state court actions analogous to the federal actions asserted here. The moving defendants argue that all of plaintiff's claims are barred by the California three-year statute of limitations,[16] and claim that certain one-year and two-year statutes are also applicable.[17] The plaintiff says that, with one exception, it is CCP § 338.1, the three-year statute, which governs.[18] The difference of opinion as to the three-year statute is as to when it began to run. That difference is due to disagreements as between the plaintiff and the defendants as to when plaintiff had sufficient knowledge, actual or constructive, to serve as the starting date for the limitations period, and as to when the last alleged conspiratorial overt act causing damage occurred.

The defendants contend that the plaintiff had actual or constructive knowledge of the unauthorized electronic surveillance sufficient to start the running of the three-year statute of limitations on *each* of the dates— October, 1967; March 7, 1968; January 28, 1969; and August 20, 1970.

In regard to the commencement date for the running of the statute, plaintiff contends:

1. The amended complaint is based upon a conspiracy that began with the 1961 electronic surveillances, or before, and continued to March 24, 1971, when the last overt act causing damage was committed.

---

"2. Whether the government's evidence in this case was tainted by illegal electronic surveillance." 351 F.Supp., at 797.

16. The following is quoted from portions of § 338 of the California Code of Civil Procedure (CCP):

"§ 338. Three Years Statutory Suit, Trespass, Trover, Fraud and Mistake—Within three years:

"1. An action upon a liability created by statute, other than a penalty of forfeiture.

"An action for trespass upon or injury to real property."

17. The decision on the three-year statute question is adequate alone to dispose of the case; but one of the other statutes relied upon by Pacific Telephone will be briefly discussed.

18. The following is quoted from the argument of Mr. Kennedy, counsel for plaintiff, as it appears in the transcript of the proceedings on the hearing of these motions:

". . . I have heard no arguments from any of the gentlemen that would disagree with my reading of California law; and that is that a three-year statute of limitations is operative as to all of our claims with the possible exception that insofar do we pled interference with an advantageous relationship in our third claim, that I think under California law that probably has a four-year statute of limitations. . . ." (Tr. p. 46).

See also concluding summary in plaintiff's original memorandum brief.

2. The running of the statutes was tolled by the absence of some of the defendants from the State of California for periods long enough to make the October 3, 1973, filing of this suit timely.

3. The statute of limitations was tolled for the period plaintiff was imprisoned from January 3, 1973 to June 11, 1973, on his conviction for violations of the income tax laws. That would make the limitation period three years, five months and eight days, instead of three years.

■ Generally, the statute of limitations begins to run from the time the cause of action accrues, regardless of the plaintiff's knowledge or ignorance of the cause of action or of the facts which give rise to it, unless knowledge is a necessary element of the plaintiff's case. *Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp.*, 9 Cir., 407 F.2d 288, 292 (1969); *Ford v. International Harvester Co.*, 9 Cir., 399 F.2d 749 (1968). It is the plaintiff's claim of fraudulent concealment by the defendants of his cause of action that requires the Court to determine the date when he had knowledge, actual or constructive, of sufficient facts to put him on notice of the existence of the cause of action, so as to establish when limitations began to run. Whether there was fraudulent concealment has not been made an issue in this hearing, so it is assumed arguendo for the purpose of deciding the limitations questions.

The Court is of the opinion that the beginning date of the applicable statutes of limitation was October 31, 1967,[18a] when

Cole got the call from Las Vegas followed by the newspaper clipping informing him about the electronic surveillance of him.

■ Fraudulent concealment of a potential cause of action by the potential defendant tolls the running of the statute of limitations during the period the concealment continues. *Phillips Petroleum Co. v. Johnson*, 5 Cir., 155 F.2d 185 (1946), cert. den. 329 U.S. 730, 67 S.Ct. 87, 91 L.Ed. 632; *Suckow Borax Mines Consol. v. Borax Consolidated*, 9 Cir., 185 F.2d 196 (1951), cert. den. 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680; *Emmett v. Eastern Dispensary and Cas. Hospital*, 130 U.S.App.D.C. 50, 396 F.2d 931 (1967); *Goldstandt v. Bear Stearns & Co.*, 7 Cir., 522 F.2d 1265 (1975). This is a federal equitable doctrine followed by many states.[19] *Kansas City, Mo. v. Federal Pac. Elec. Co.*, 8 Cir., 310 F.2d 271, 277 (1962); *Prather v. Neva Paperbacks, Inc.*, 5 Cir., 446 F.2d 338, 340 (1971). This is due to the fact that, while recognizing that state limitations period is controlling in the absence of a federal statute, the federal courts have held that the determination of the time of the accrual of a cause of action to enforce a federally created right is a federal question. *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Janigan v. Taylor*, 1 Cir., 344 F.2d 781 (1965), cert. den. 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120.[20] To toll the running of limitations, the concealment must be successful. *Weinberger v. Retail Credit Co.*, 4 Cir., 498 F.2d 552 (1974); *Kansas City, Mo.* and *Prather*,[21] both supra. The statute is tolled only for so

**18a.** Cole said he learned of the surveillance in October, 1967, but could not give the exact date. The last day of the month is arbitrarily taken to avoid complications that might arise from taking any other day of the month.

**19.** California is one of the states which has adopted the doctrine. *Suckow Borax Mines Consol. v. Borax Consolidated*, supra; *Kasey v. Molybedenum Corporation of America*, 9 Cir., 336 F.2d 560, 573 (1964).

**20.** *Janigan v. Taylor*, supra, was a suit by a seller to recover from a buyer for alleged violations of a rule promulgated pursuant to the Securities Exchange Act. The opinion in that case says: ". . . [W]e hold that federal

law must determine the date of accrual here even though the period of limitation thereafter is determined by state law." 344 F.2d, at p. 784.

This is material here because of the number of opinions from different federal circuit courts cited in the discussion of when the period of limitation begins to run in cases where fraudulent concealment is alleged.

**21.** ". . . [T]wo elements are required before this equitable principle is applicable: the plaintiff must show both *successful concealment* of the cause of action and fraudulent means to achieve that concealment." *Prather*, 446 F.2d, at p. 341. (Emphasis added).

long as the concealment endures. *Phillips Petroleum Co.*, 155 F.2d, at 191, and *Emmett*, 396 F.2d, at p. 938, both supra. The tolling of the statute of limitations by fraudulent concealment ends when the plaintiff acquires knowledge, or could it by the exercise of due diligence, that he may have a potential claim. *Westinghouse Elec. Corp. v. City of Burlington, Vermont*, 122 U.S.App.D.C. 65, 351 F.2d 762, 764 (1965); *Moviecolor Limited v. Eastman Kodak Co.*, 2 Cir., 288 F.2d 80, 90 (1961), cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; and *Phillips Petroleum Co., Suckow Borax Mines Consol., Emmett,* and *Goldstandt,* all supra.[22]

No fiduciary relationship was involved here; and under the above cited cases, the knowledge of electronic surveillance of himself Cole admits that he had in October, 1967, was sufficient to end the tolling of the statutes of limitation. His statements that the information was without confirmation at the time and that he was not aware of the full extent, nature and locations of all electronic surveillance are not adequate to prolong the tolling of the statutes. All that was required was that he had actual or constructive knowledge[23] that there had been an invasion of his rights. *Lucom v.*

Atlantic National Bank of West Palm Beach, Fla.*, 5 Cir., 354 F.2d 51, 54 (1965), or that he might have a cause of action, *Westinghouse Electric Corp.*[24] and *Emmett*, both supra, or that he had a potential claim, *Prather*,[25] supra. All of the cases above cited in this discussion hold that knowledge of the evidence or the details of his case is not necessary to stop the toll.[26]

■ Under the circumstances, it is established beyond dispute that the date when the statute of limitations began to run on plaintiff's claims was October 31, 1967, almost six years before this suit was filed. That was more than enough to establish a bar under both the three-year statute of limitations, as well as the four-year statute, if it is applicable. While it is not necessary, a few comments will be made on two of the other accrual dates suggested for the Court's consideration if October, 1967, should not be accepted.

Each one of those dates (March 7, 1968 and January 28, 1969), considered on its own merits, could be an accrual date. Attorneys for Cole met with Gildea on the first date, and with Huckabee on the second date, for official Department of Justice con-

---

**22.** "We call attention, however, to the fact that a fraudulent concealment tolls a statute of limitation only for so long as the concealment endures and, as we have held, that [o]ne well established defense to a claim of fraudulent concealment is that the plaintiff knew, or by the exercise of due diligence should have known, that he may have had a cause of action. . . ." *Emmett*, 396 F.2d, at p. 938.

**23.** "There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807, 809 (1879).

**24.** "[W]here the party at fault conceals the *invasion of right*. . . . In any event, the *invasions* were known in 1954 when the applicant attacked the accounting of the bank. . . ." *Lucom*, 354 F.2d, at pp. 54–55. (Emphasis added).

**25.** ". . . This was merely ignorance of evidence, not ignorance of a potential claim. . . ." *Prather*, 446 F.2d, at p. 341. (Emphasis added).

**26.** ". . . Mere ignorance of evidence on which to establish a claim is not enough, even

if the complaint here could be read as alleging that. . . ." *Moviecolor Limited,* 288 F:2d, at 87.

". . . Normally a statute of limitations is not tolled merely because a potential plaintiff had been ignorant of the law; *the policy behind the statute of limitations would require that he seek legal* advice. . . . But '[i]t is well established that *a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute.* . . .'" *Goldstandt,* 522 F.2d, at 1269. (Emphasis added).

". . . The bells do not toll the limitations statute while one ferrets the facts. . . ." *Prather*, 446 F.2d, at 341.

". . . When he (plaintiff) knew the statements were not true the concealment ceased to be effective, and the statute began to run. He could not wait to acquire better proofs, but *should sue and then use the implements the Rules of Procedure provide for extracting from the opposite party and others the full truth.* He cannot wait more than four years to investigate. . . ." *Phillips Petroleum Co.,* 155 F.2d, at 191. (Emphasis added).

ferences regarding Cole's alleged income tax problems; and on each occasion, they revealed that they knew the details of the electronic surveillance of Cole. The knowledge of Cole's attorneys about the eavesdropping was imputed to him. *Bailey v. Gulf Insurance Co.*, 10 Cir., 389 F.2d 889 (1968); *Eitel v. Schmidlapp*, 4 Cir., 459 F.2d 609 (1972).

It is unnecessary to discuss the last possible accrual date (August 22, 1970), because it presents some questions that are not involved in connection with the other beginning dates.

The Court is of the opinion that the three-year statute of limitations is applicable to all of the plaintiff's claims; but each one of the above discussed accrual dates would make all the statutes cited by the parties a bar, including the four-year statute argued by the plaintiff as to one of his claims.

. ▮ Plaintiff relies primarily on his civil conspiracy claim to survive the challenge of the statutes of limitation. The conspiracy charged was to implant the electronic devices in Cole's office in Beverly Hills; to overhear and record all oral communications in the office at intervals during the period from about May 5, 1961 to about August 29, 1962, and in Room 223, Holiday Inn, Marion, Ohio in August, 1964; to use in Cole's tax trial in New York and in the prior IRS investigation of the charges information gained in the unauthorized surveillance; and to conceal the fact of the surveillance and its fruits.

In his argument on the hearing of these motions, plaintiff's counsel contended that the three-year statute was applicable. He further argued that the statute began to run from the date of the last overt act causing damage to plaintiff. His brief cites the following cases as establishing that rule: *Hoffman v. Halden*, 9 Cir., 268 F.2d 280 (1959); *Lambert v. Conrad*, 9 Cir., 308 F.2d 571 (1962); *Knowles v. Carson*, 5 Cir., 419 F.2d 369 (1970); *Crosswhite v. Brown*, 10 Cir., 424 F.2d 495 (1970); and *Bergschneider v. Denver*, 9 Cir., 446 F.2d 569 (1971).

There is no disagreement about the correctness of the statement of the rule, or about the fact that the California three-year statute of limitations is generally applied to federal civil conspiracy actions brought in that state. *Smith v. Cremins* and *Bergschneider v. Denver,* both supra. Pacific Telephone claims that the special federal limitations statute of one year (47 U.S.C. § 415[b]), applicable to claims against a regulated communications utility, also bars the plaintiff's suit against it.

As would be expected, it would be highly impractical to determine the question of the existence of an alleged complicated conspiracy in a summary judgment hearing, and that matter is not in issue here. Such existence will be assumed arguendo for the purpose of this proceeding.

The real disagreement between the parties as to the limitations question here is as to when the alleged conspiracy terminated and as to the time of the commission of the last overt act causing damage to plaintiff. The defendants argue that the undisputed facts show that there could have been no conspiracy, as claimed by the plaintiff, after October, 1967. They further say that the record establishes beyond dispute that no overt act causing legal damage to plaintiff took place within the applicable limitation period.

The Court is of the opinion that it is established beyond dispute that:

1. The conspiracy, if any ever existed, terminated on October 2, 1967, and certainly no later than March 7, 1968, or January 28, 1969. Of course, there could be no overt act in furtherance of the conspiracy after it terminated.

2. Even if the alleged conspiracy continued to a time within the limitation period, there was no overt act in furtherance of it during such period which caused legal damage to the plaintiff.

The disposition of the case on this basis makes it unnecessary to discuss many of the questions briefed by the parties, such as whether the alleged conspiracy was based on 42 U.S.C. Secs. 1983–85, 18 U.S.C. Secs.

2510–20, or on federal common law as recognized by *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); and whether either or both 18 U.S.C. Secs. 2510–20 and the *Bivens* case should be retroactively applied.

The plaintiff claims that the defendants conspired to get him convicted of federal offenses. It was not wrong for federal agents to work together to try to get the plaintiff convicted of a crime where there was reasonable basis for believing him to be guilty, unless they used illegal methods or tainted information in the investigation and prosecution of the case. If that were not true, it would never be safe to use two agents in a criminal investigation. Plaintiff evidently recognized it had to be legally wrongful. He alleged as the foundation of his conspiracy that the defendants conspired to commit illegal acts of electronic surveillance of him, to use the information gained thereby fraudulently to bring about his conviction, and to conceal by fraudulent means the fact of the surveillance and the information resulting from it. Those matters were the only things that could have made it unlawful for the defendants to work together in the investigations and trials here involved.

The record before this Court pertinent to the summary judgment hearing shows that the following matters are established beyond question:

(1) There was no electronic surveillance of Cole by government representatives after June, 1964, at the Holiday Inn in Marion, Ohio.

(2) No use of the information gained through the electronic surveillance was ever made by the government in the investigation or the trial of the charges involved in the plaintiff's tax case in New York in 1971. None of the information from the unauthorized surveillance was ever given to the IRS. That issue was thoroughly litigated in the trial of the tax case and in hearings on Cole's motions, both before and after affirmance of his conviction, and during the trial on the merits. The trial court found: "It is clear beyond doubt that none of the

five IRS agents responsible for this tax case knew of or had read the surveillance logs of the illegal eavesdrops. . . ." 325 F.Supp. 771, and that the government had established beyond a reasonable doubt that the proof used in the trial was free of any taint of illegality, 325 F.Supp., at 770. The Court of Appeals said it was gained from an independent source. 463 F.2d at 174. The finding of Judge Pollack heretofore mentioned shows the utter lack of any basis for the claim of taint by pointing out that "with one minor exception," *the acts for which the defendants were prosecuted were not committed until after the electronic surveillance of Cole was terminated.* 351 F.Supp., at 796.

(3) The alleged fraudulent concealment terminated with the government's filing on October 2, 1967, of the document in *U. S. v. Levinson and Torres* in Las Vegas making a full disclosure of the electronic surveillance here involved. The disclosure of the surveillance of Cole was made in that case because he was considered a possible co-conspirator with Levinson and Torres. The document stated that it was "the announced policy of the Department of Justice" to make disclosure to the appropriate court and defense counsel of all material matters relating to unauthorized electronic surveillances; and that it had been its policy since the government's filing of its Supplemental Memorandum in *Schipani v. United States,* 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428 (1966). It has already been shown that in each of the conferences (March 7, 1968 and January 28, 1969) relating to Cole's federal tax prosecution problems, Cole's lawyers told government counsel that they had full information as to unauthorized electronic surveillance of Cole, including that disclosed in the document filed in the Las Vegas case. If the alleged fraudulent concealment did not end on October 2, 1967, it did when it was revealed in the tax conferences that Cole's lawyers had full knowledge of it. There was nothing to conceal after those occasions.

Since the surveillance, the use of the information obtained thereby, and the alleged

fraudulent concealment all terminated by October 2, 1967 (six years before the filing of this case), or at the latest by March 7, 1968 (over five-and-a-half years before such filing), there was no conspiracy after those dates and there could have been no overt act in furtherance of it. The conspiracy claim is therefore barred by the three-year statute of limitations.

Assuming arguendo, however, that it continued, as claimed by the plaintiff, until his income tax conviction became final in 1972, this action would not be relieved from the bar of the three-year statute, because no conspiratorial overt act which caused legal damage to plaintiff was committed within the limitation period.

Plaintiff relies upon two alleged conspiratorial overt acts each claimed to have been committed at a time which would prevent the bar of his claim by limitations:

(1) In December, 1970, in Cole's Writ of Error Coram Nobis case in Los Angeles, the government refused to admit that tainted evidence was used in Cole's obstruction of justice case in 1963.

(2) In the four day motion for new trial hearing in Cole's New York case, beginning on March 24, 1971, the government failed to produce certain airtels demanded by Cole, claimed to have been relevant to the electronic surveillance of him.

Each one of the claims by plaintiff as to injury from alleged fraudulent conduct by government officers and agents has been thoroughly litigated in one or more full plenary hearings in federal court, and has been repudiated each time. The contentions that the government acted in bad faith in the coram nobis hearing, and that

the plaintiff's right to testify in his tax case was impaired thereby were thoroughly explored in a four day motion for new trial hearing before Judge Pollack, *United States v. Cole,* S.D.N.Y., 334 F.Supp. 961 (1971), and again in a post-conviction hearing after the conviction had been affirmed, *United States v. Cole,* S.D.N.Y., 351 F.Supp. 795 (1972). The Court of Appeals, in the appeal from the conviction, also passed upon and rejected this point. *United States v. Cole,* 2 Cir., 463 F.2d 163 (1972). The questions about the relevance and importance of the airtels was one of the issues in the evidentiary post-conviction hearing after the affirmance of the conviction. *United States v. Cole,* S.D.N.Y., 351 F.Supp. 795 (1972). The plaintiff is not daunted by Judge Pollack's declaration in the opinion on motion for new trial, repeated in the opinion on the post-conviction motion, that Cole could not feed off the unauthorized surveillance of him the rest of his life.[27] He is back again in this case with the same tattered, beleagured claims.

Under the holdings in those cases, it conclusively appears that there is no basis whatever for Cole's claims that he was damaged by bad faith action of the government in the *coram nobis* proceeding, or by his failure to get the requested airtels during the motion for new trial hearings in March, 1971.

On the *coram nobis* proposition, the New York federal courts held that:

(1) The failure of Judge Westover to hold a hearing on the *coram nobis* petition before the trial of Cole's case in New York was due to a statement to him by Mr. Joseph A. Ball of Long Beach, California, Cole's counsel in that action.[28]

---

**27.** "While the government's breach of the defendant's constitutional right to be free of illegal searches and seizures is reprehensible, such illegality by the government does not fortuitously give the defendant a license to break the law thereafter with impunity. . . ." 325 F.Supp., at p. 769, and 351 F.Supp., at p. 796.

**28.** ". . . In fact, Cole's counsel had told Judge Westover unambiguously a few days be-

fore the commencement of the New York trial that *Cole was not concerned about possible use of his conviction to impeach his testimony in New York.* Because of this disclaimer of any need for accelerated action, Judge Westover specifically declined to make an immediate and spontaneous ruling." 334 F.Supp., at p. 969. (Emphasis added).

(2) The government's change of position in the *coram nobis* case was not due to bad faith.[29]

(3) When time came for the defense to put on evidence, Cole had no reason to stay off the witness stand for fear of the 1963 California conviction, because his own lawyer's trial tactics had brought about the admission of it under the doctrine of Verbal Completeness while the government was making its case in chief.

(4) Cole made no effort to get the court to postpone the trial until the disposition of the *coram nobis* petition. Such conduct would keep him from complaining that he suffered legal damage as a result of the pendency of the *coram nobis* action during his trial.[30]

(5) Cole's failure to take the stand resulted in no injury to him because the proof of his guilt was overwhelming.[31] There has never been any suggestion in any of the proceedings as to what Cole's testimony would have been. Experience teaches us that one of the dangers of putting an accused on the stand is that he will corroborate much of the prosecution's case.

The other overt act claimed to have occurred within the limitation period was the government's failure to produce certain airtels demanded by Cole,[32] et al., at the time of the hearing on the motion for new trial shortly after the verdict. The reason for not having them available at the time does not appear, but the government did produce them for a post-conviction hearing after the conviction had been upheld on appeal. Judge Pollack held an evidentiary hearing on the questions of the materiality of the airtels and of injury to Cole from failure to get them at the time they were originally

**29.** In regard to the government's withdrawal of its contest in the *coram nobis* proceeding, Judge Pollack, after a four day evidentiary hearing, said: ". . . [T]he government's consent may well have been predicated on the unavailability of witnesses to meet the charges—as suggested by Judge Westover—or other factors collateral to the merit of Cole's arguments. The government had previously announced that there was no substance to the attack on the conviction. It added only that it could not prove what it had asserted; there was no concession that the attack on the conviction was meritorious." 334 F.Supp., at p. 970.

The following is quoted from Chief Judge Friendly's opinion on the appeal from the conviction: "Unlike appellants, we do not see the records, and the circumstances surrounding their discovery, as demonstrating . . . that the government purposely delayed its acknowledgment of the validity of the coram nobis proceedings." 463 F.2d, at p. 170, footnote 11.

**30.** "In short, defendants' contention that Cole was kept from the witness stand for fear that his availability for impeachment would cure any error completely ignores the fact that no effort was made to apprise the Court of the problem or to seek a continuance until the status of the California conviction was ruled on by Judge Westover." 334 F.Supp., at p. 969.

". . . No effort of any sort was made during the trial to exclude evidence of the conviction on the ground that it was under attack in California. . . ." 334 F.Supp., at p. 969.

". . . The victim of alleged prejudice cannot be allowed to nurse it along to the point of reversibility and then take advantage of a situation which by his silence he has helped to create." 334 F.Supp., at p. 970, footnote 10. See also 463 F.2d, at p. 170.

**31.** "After the elimination of any stray item as to which the defendants might conceivably complain properly, there was still enough, indeed, overwhelming evidence remaining to sustain the verdict. . . ." 325 F.Supp., at p. 771.

"Finally, the Court finds that any error which may have occurred was harmless and guilt of tax evasion and perjury unquestionable. . . ." 334 F.Supp., at p. 970.

". . . The essence of the charge was the payment of the legal fees, an issue which clearly was proper for submission, and a *pattern* of having CFR [Cole, Fischer & Rogow] take deductions for personal expenses of Cole and Fischer. The evidence of this was so overwhelming that no one could reasonably suppose the verdict would have been different even if one or two of the nearly twenty items, should have been withheld from the jury—a question on which we thus need not pass. . . ." 463 F.2d, at pp. 166–67.

**32.** An airtel is a written communication between government officials. The airtels here in question passed between the Director of the FBI and the Los Angeles office of the FBI between August 10th and September 5, 1962, over nine years before the trial of Cole's case in New York.

demanded. The Court held against Cole on both issues.[33]

■ Plaintiff is precluded by the doctrine of collateral estoppel to relitigate the issues under discussion. *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897);[34] *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Granader v. Public Bank,* supra.

■ The doctrine of collateral estoppel is applicable in a civil case to issues determined in a previous criminal prosecution. *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (1962), by Supreme Court of California, en banc.

The requirements for the application of the collateral estoppel to Cole's claims are present here. As is indicated in the Supreme Court cases, *Commissioner of Internal Revenue* and *Southern Pacific R. Co.,* cited above, the doctrine of equitable estoppel was conceived to afford relief from the rigid requirements of *res judicata* that the causes of action and the parties in the two cases involved be identical. It gives parties and courts relief from harassment by persons who want to litigate the same issue over and over in various kinds of cases and against different opposition. The test for the application of the rule is whether the same issue was litigated to judicial determination by the *party against whom the rule is asserted,* or by his privy. *Lynch v. Glass,* Cal.App., 44 Cal.App.3d 943, 119 Cal.Rptr. 139; *Teitelbaum Furs, Inc.,* supra; *Cauefield v. Fidelity and Cas. Company of N.Y.,*

5 Cir., 378 F.2d 876 (1967). There is no question about the fact that the issues in the present case were litigated to judicial determination by Cole in the New York case. He is the party against whom the doctrine of judicial estoppel is being asserted. He had his day in court on those issues, and more. The opposing parties in this case and the New York case are not the same, although the same conduct of the same government officers and agents is involved in both cases. However, the doctrine of mutuality of estoppel is not favored in collateral estoppel cases. *Bernhard v. Bank of America,* 19 Cal.2d 807, 810, 122 P.2d 892, 894; *Teitelbaum Furs, Inc.,* 375 P.2d at 440. Cole was a party to the New York case, not by privy but in person. He injected the issues in question into those cases, and litigated them to the limit in extensive evidentiary hearings. He now seeks to drag the government officers and agents named as defendants here through the same issues on which he has already lost several times. *Lynch v. Glass,* 44 Cal.App.3d, at 947, 119 Cal.Rptr. 139, says that one of the purposes of collateral estoppel is to protect against vexatious litigation. In Louisiana, where identity of parties is usually required for application of the doctrine of judicial estoppel, the courts make an exception "where it will prevent fruitless relitigation of an issue which has already been judicially determined." *Cauefield v. Fidelity and Cas. Co. of N. Y.,* 378 F.2d at 878. The doctrine of collateral estoppel applies here to prevent Cole from relitigating the same issues which were tried and judicially determined in the New York proceedings.

**33.** "The airtels in question self evidently relate to the California inquiries into obstruction of justice and perjury before California grand juries and the taint conceded to exist therein; they do not shed any light on the genesis of or the independent investigation leading to the New York income tax indictment." 351 F.2d, at pp. 797–98.

". . . The government did actually discover the acts for which defendants were prosecuted in a legal manner, on the basis of information legally obtained and the airtels not presented would not have caused the Court to make any different finding." 351 F.Supp., at p. 798.

**34.** "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. . . ." 168 U.S., at p. 48, 18 S.Ct., at p. 27, 42 L.Ed., at p. 377.

Even in the absence of collateral estoppel, the Court would hold from the matters it can consider on the motions for summary judgment that it is here established beyond genuine issue that no conspiratorial act causing legal damage to plaintiff occurred at a time that would keep the plaintiff's conspiracy claim from being barred by the three-year statute of limitations.

■ The three-year statute of limitations bars all claims against Pacific Telephone, but the Court is of the opinion that, as to it, the one-year limitation period provided in 47 U.S.C., Sec. 415(b) [35] is also a bar. The statute applies to civil actions brought against a federally regulated communications utility in federal court, as well as those filed with the regulatory agency. *Ward v. Northern Ohio Telephone Co.,* N.D. Ohio, 251 F.Supp. 606 (1966). The discussion of the facts shows that a sufficient period lapsed between the accrual of all plaintiff's claims and the filing of the suit to make the one-year statute a bar.

■ Plaintiff indicated an intention to claim that the applicable statutes of limitation were tolled as to some of the defendants by reason of their prolonged absences from the State of California during the critical period. There is nothing in the record in this proceeding to establish such an absence on the part of any defendant.

Almost any judge would rather see a case decided on its merits than to dispose of it under a statute of limitations. In this case, however, the plaintiff has had his day in court, and much more, on the fact issues he is urging here. He has no right to seek vengeance now by harassment for these acts which have been dragged before the courts time after time. The cost of the preparation and the trial of this case would be great, and the defense should not be put to that cost on a stale demand. The Supreme Court of the United States, in *Wood v. Carpenter,* 101 U.S. 135, 139, 25 L.Ed. 807, 808 (1879), said of the statutes of limitation:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

Those comments fit this case.

Summary judgment will be entered in favor of each of the defendants, except Joel R. Benton, in accordance herewith.

---

35. 47 U.S.C., Sec. 415(b) provides:
"(b) All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within one year from the time the cause of action accrues, and not after, subject to subsection (d) of this section."

Subsection (d) mentioned in the quotation is not relevant to the questions in this case.

Under the provisions of Chap. 5, Title 47, U.S.C., the statute applies to actions against federally regulated communications utilities such as Pacific Telephone.